**In the United States District Court**
**For the Western District of Texas**
**San Antonio Division**

| | | |
|---|---|---|
| **Neil Gilmour, Trustee for the Grantor Trusts of** | § | |
| **Victory Medical Center Craig Ranch, LP,** | § | |
| **Victory Medical Center Landmark, LP,** | § | |
| **Victory Medical Center Mid-Cities, LP,** | § | **Civil Action No. 5:17-cv-00518** |
| **Victory Medical Center Plano, LP,** | § | |
| **Victory Medical Center Southcross, LP,** | § | |
| **Victory Parent Company, LLC,** | § | |
| **Victory Medical Center Beaumont, LP, and** | § | |
| **Victory Surgical Hospital East Houston, LP,** | § | |
| _Plaintiffs_, | § | |
| | § | |
| **v.** | § | |
| | § | |
| **Blue Cross and Blue Shield of Alabama; Blue** | § | |
| **Cross and Blue Shield of Arizona, Inc.;** | § | |
| **Arkansas Blue Cross and Blue Shield;** | § | |
| **BlueAdvantage Administrators of Arkansas;** | § | |
| **Blue Cross Blue Shield of California; Blue** | § | |
| **Shield of California Life & Health Insurance** | § | |
| **Company; Blue Cross of California; Anthem** | § | |
| **Blue Cross Life and Health Insurance** | § | |
| **Company; Rocky Mountain Hospital and** | § | |
| **Medical Service, Inc.; Anthem Health Plans,** | § | |
| **Inc.; Highmark BCBSD, Inc.; Blue Cross and** | § | |
| **Blue Shield of Florida, Inc.; Anthem Insurance** | § | |
| **Companies, Inc.; Blue Cross Blue Shield of** | § | |
| **Georgia, Inc.; Blue Cross of Idaho Health** | § | |
| **Service, Inc.; Blue Cross of Idaho Care Plus,** | § | |
| **Inc.; Regence BlueShield of Idaho, Inc.;** | § | |
| **Hallmark Services Corporation; Blue Cross** | § | |
| **Blue Shield of Iowa; Blue Cross Blue Shield of** | § | |
| **Indiana; Wellmark, Inc.; Blue Cross Blue** | § | |
| **Shield of Kansas, Inc.; Anthem Health Plans of** | § | |
| **Kentucky, Inc.; Louisiana Health Service &** | § | |
| **Indemnity Company; BCBS Care First of** | § | |
| **Maryland; CareFirst of Maryland, Inc.; Blue** | § | |
| **Cross and Blue Shield of Massachusetts, Inc.;** | § | |
| **Blue Cross Blue Shield of Michigan; BCBSM,** | § | |
| **Inc. d/b/a Blue Cross and Blue Shield of** | § | |
| **Minnesota; Blue Cross & Blue Shield of** | § | |
| **Mississippi, a Mutual Insurance Company;** | § | |
| **RightCHOICE Managed Care, Inc.; Blue** | § | |

**Cross and Blue Shield of Kansas City; Blue** §
**Cross and Blue Shield of Nebraska; Anthem** §
**Blue Cross Blue Shield of Nevada; Anthem** §
**Health Plans of New Hampshire, Inc.; Blue** §
**Cross Blue Shield of New Jersey; Horizon Blue** §
**Cross and Blue Shield of New Jersey; Empire** §
**HealthChoice, Inc.; Healthnow New York Inc.;** §
**Blue Shield of Northeastern New York;** §
**Lifetime Healthcare, Inc.; Blue Cross Blue** §
**Shield of New York; Blue Cross and Blue** §
**Shield of North Carolina; Noridian Mutual** §
**Insurance Company; Anthem Blue Cross of** §
**Ohio; Blue Cross Blue Shield of Ohio;** §
**Community Insurance Company; Regence** §
**BlueCross BlueShield of Oregon; Capital** §
**BlueCross; Capital Blue Cross Blue Shield;** §
**Capital Hospital Service; Highmark Health;** §
**Independence Health Group, Inc.; QCC** §
**Insurance Company; Blue Cross & Blue Shield** §
**of Rhode Island; Blue Cross and Blue Shield of** §
**South Carolina; BlueCross BlueShield of** §
**Tennessee; Blue Cross Blue Shield Hallmark;** §
**Blue Cross Blue Shield Highmark; Regence** §
**BlueCross BlueShield of Utah; Group** §
**Hospitalization and Medical Services, Inc.;** §
**Anthem Health Plans of Virginia, Inc.; Anthem** §
**Blue Cross Blue Shield of Virginia; Regence** §
**BlueShield; Premera Blue Cross; Highmark** §
**West Virginia Inc.; Blue Cross and Blue Shield** §
**Association; Blue Cross Blue Shield Anthem** §
**National Account,** §
　　　　*Defendants.* §

### Plaintiffs' Original Complaint

Plaintiff Neil Gilmour, Trustee for Victory Medical Center Craig Ranch, LP, Victory Medical Center Landmark, LP, Victory Medical Center Mid-Cities, LP, Victory Medical Center Plano, LP, Victory Medical Center Southcross, LP, and Victory Parent Company, LLC; and Plaintiff Victory Medical Beaumont, LP, and Plaintiff Victory Surgical Hospital East Houston LP (collectively, "Plaintiffs"), file this Original Complaint against Defendants, Blue Cross and Blue Shield of Alabama; Blue Cross and Blue Shield of Arizona, Inc.; Arkansas Blue Cross and Blue

Shield; BlueAdvantage Administrators of Arkansas; Blue Cross Blue Shield of California; Blue

Shield of California Life & Health Insurance Company; Blue Cross of California; Anthem Blue

Cross Life and Health Insurance Company; Rocky Mountain Hospital and Medical Service, Inc.;

Anthem Health Plans, Inc.; Highmark BCBSD, Inc.; Blue Cross and Blue Shield of Florida, Inc.;

Anthem Insurance Companies, Inc.; Blue Cross Blue Shield of Georgia, Inc.; Blue Cross of Idaho

Health Service, Inc.; Blue Cross of Idaho Care Plus, Inc.; Regence BlueShield of Idaho, Inc.;

Hallmark Services Corporation; Blue Cross Blue Shield of Iowa; Blue Cross Blue Shield of

Indiana; Wellmark, Inc.; Blue Cross Blue Shield of Kansas, Inc.; Anthem Health Plans of

Kentucky, Inc.; Louisiana Health Service & Indemnity Company; BCBS Care First of Maryland;

CareFirst of Maryland, Inc.; Blue Cross and Blue Shield of Massachusetts, Inc.; Blue Cross Blue

Shield of Michigan; BCBSM, Inc. d/b/a Blue Cross and Blue Shield of Minnesota; Blue Cross &

Blue Shield of Mississippi, a Mutual Insurance Company; RightCHOICE Managed Care, Inc.;

Blue Cross and Blue Shield of Kansas City; Blue Cross and Blue Shield of Nebraska; Anthem

Blue Cross Blue Shield of Nevada; Anthem Health Plans of New Hampshire, Inc.; Blue Cross

Blue Shield of New Jersey; Horizon Blue Cross and Blue Shield of New Jersey; Empire

HealthChoice, Inc.; Healthnow New York Inc.; Blue Shield of Northeastern New York; Lifetime

Healthcare, Inc.; Blue Cross Blue Shield of New York; Blue Cross and Blue Shield of North

Carolina; Noridian Mutual Insurance Company; Anthem Blue Cross of Ohio; Blue Cross Blue

Shield of Ohio; Community Insurance Company; Regence BlueCross BlueShield of Oregon;

Capital BlueCross; Capital Blue Cross Blue Shield; Capital Hospital Service; Highmark Health;

Independence Health Group, Inc.; QCC Insurance Company; Blue Cross & Blue Shield of Rhode

Island; Blue Cross and Blue Shield of South Carolina; BlueCross BlueShield of Tennessee; Blue

Cross Blue Shield Hallmark; Blue Cross Blue Shield Highmark; Regence BlueCross BlueShield

of Utah; Group Hospitalization and Medical Services, Inc.; Anthem Health Plans of Virginia, Inc.; Anthem Blue Cross Blue Shield of Virginia; Regence BlueShield; Premera Blue Cross; Highmark West Virginia Inc.; Blue Cross and Blue Shield Association; Blue Cross Blue Shield Anthem National Account; (collectively, the "BCBS Entities" or "Defendants"):

## Jurisdiction and Venue

1.      This Court has personal jurisdiction over all Defendants because they all conduct substantial business in Texas and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Texas.

2.      The Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. §§ 1001 et seq., the Employment Retirement Income Security Act ("ERISA"), as Plaintiffs' claims in part arise under ERISA.  To the extent that Plaintiffs bring claims that do not arise out of ERISA, the Court has pendant matter jurisdiction, or alternatively subject matter jurisdiction over those claims pursuant to 28 U.S.C. § 1332(a) because this is an action between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claims occurred in this district.

## Parties

4.      Victory Medical Center Craig Ranch, LP ("Victory Craig Ranch") was a Texas limited partnership that formerly operated a hospital located at 6045 Alma Road, Suites 100 and 200, in McKinney, Collin County, Texas 75070, where Victory Craig Ranch was headquartered. Victory Craig Ranch was a privately-owned entity that provided specialized-surgical-hospital services to patients in the Dallas-McKinney market.  Victory Craig Ranch filed a petition for relief

under Chapter 11 of the Bankruptcy Code on June 12, 2015, Case Number 15-42379 in the Northern District of Texas, Fort Worth Division.

5.      Victory Medical Center Landmark, LP ("Victory Landmark") was a Texas limited partnership that formerly operated a hospital located at 5330 N. Loop 1604W, in San Antonio, Bexar County, Texas 78249, where Victory Landmark was headquartered.  Victory Landmark was a privately-owned entity that provided specialized-surgical-hospital services to patients in the San Antonio market.  Victory Landmark filed a petition for relief under Chapter 11 of the Bankruptcy Code on June 12, 2015, Case Number 15-42382 in the Northern District of Texas, Fort Worth Division.

6.      Victory Medical Center Mid-Cities, LP ("Victory Mid-Cities") was a Texas limited partnership that formerly operated a hospital located at 1612 Hurst Tower Center Drive, in Hurst, Tarrant County, Texas 76054, where Victory Mid-Cities was headquartered.  Victory Mid-Cities was a privately-owned entity that provided specialized-surgical-hospital services to patients in the Dallas-Fort Worth market.  Victory Mid-Cities filed a petition for relief under Chapter 11 of the Bankruptcy Code on June 12, 2015, Case Number 15-42373 in the Northern District of Texas, Fort Worth Division.

7.      Victory Medical Center Plano, LP is ("Victory Plano") was a Texas limited partnership that formerly operated a hospital located at 2301 Marsh Lane, in Plano, Collin County, Texas 75093, where Victory Plano was headquartered.  Victory Plano was a privately-owned entity that provided specialized-surgical-hospital services to patients in the Dallas-Plano market.  Victory Plano filed a petition for relief under Chapter 11 of the Bankruptcy Code on June 12, 2015, Case Number 15-42377 in the Northern District of Texas, Fort Worth Division.

8.      Victory Medical Center Southcross, LP ("Victory Southcross"), formerly known as Innova Hospital San Antonio, LP, was a Texas limited partnership that formerly operated a hospital located at 4243 E. Southcross Blvd., San Antonio, Texas 78222, where Victory Southcross was headquartered.  Victory Southcross was a privately-owned entity that provided specialized-surgical-hospital services to patients in the San Antonio market.  Victory Southcross filed a petition for relief under Chapter 11 of the Bankruptcy Code on July 10, 2015, Case Number 15-42818 in the Northern District of Texas, Fort Worth Division.

9.      Victory Parent Company, LLC ("VPC") is a Texas limited liability company.  VPC as the sole member of Victory Medical Beaumont GP, LLC, the general partner of Victory Beaumont.  VPC is also the sole member of Victory Surgical Hospital East Houston GP, LLC, Victory East Houston's general partner.  VPC was headquartered in the city of The Woodlands, Montgomery County, Texas.  VPC filed a petition for relief under Chapter 11 of the Bankruptcy Code on June 12, 2015, Case Number 15-12384 in the Northern District of Texas, Fort Worth Division.

10.     Plaintiff Neil Gilmour is the trustee for the Grantor Trusts for Victory Medical Center Craig Ranch, LP, Victory Medical Center Landmark, LP, Victory Medical Center Mid-Cities, LP, Victory Medical Center Plano, LP, Victory Medical Center Southcross, LP, and Victory Parent Company, LLC.  Gilmour was appointed trustee pursuant to the First Amended Plan of Reorganization (the "Plan") confirmed on March 28, 2016, in Case No. 15-42373 in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division.  Pursuant to the Plan, all of the debtors' claims and causes of action against the Defendants have vested in the Grantor Trusts.

11. Plaintiff Victory Medical Center Beaumont, LP ("Victory Beaumont") is a Texas limited partnership that formerly operated a hospital located at 6025 Metropolitan Drive, in Beaumont, Jefferson County, Texas 77706, where Victory Beaumont was headquartered. Victory Beaumont was a privately-owned entity that provided specialized-surgical-hospital services to patients in the Beaumont market.

12. Plaintiff Victory Surgical Hospital East Houston, LP ("Victory East Houston") is a Texas limited partnership that formerly operated a hospital located at 12950 East Freeway, Suite 100, in Houston, Harris County, Texas 77015, where Victory East Houston was headquartered. Victory East Houston was a privately-owned entity that provided specialized-surgical-hospital services to patients in the Houston market.

13. References in this Complaint to "Victory" include collectively, Victory Craig Ranch, Victory Landmark, Victory Mid-Cities, Victory Plano, Victory Southcross, Victory Beaumont, Victory East Houston, and VPC. References in this Complaint to "Plaintiffs" include collectively Victory Beaumont and Victory East Houston, and Neil Gilmour as the Trustee for the Grantor Trusts for Victory Craig Ranch, Victory Landmark, Victory Mid-Cities, Victory Plano, Victory Southcross, and VPC.

14. Defendant Blue Cross and Blue Shield of Alabama ("BCBS-AL") is a corporation of the State of Alabama with its principal place of business located at 450 Riverchase Parkway E., Birmingham, Alabama 35244. It may be served with process through its registered agent, Michael Leonard Patterson, 450 Riverchase Parkway E., Birmingham, Alabama 35244.

15. Defendant Blue Cross and Blue Shield of Arizona, Inc. ("BCBS-AZ") is a corporation of the State of Arizona with its principal place of business located at 2444 West Las

Palmaritas Drive, Phoenix, Arizona 85021.  It may be served with process through its registered agent, Deanna Salazar, 2444 West Las Palmaritas Drive, Phoenix, Arizona 85021.

16.     Defendant Arkansas Blue Cross and Blue Shield ("BCBS-AR") is a corporation of the State of Arkansas with its principal place of business located at 601 S. Gaines Street, Little Rock, Arkansas 72201.  It may be served with process through its registered agent, Lee Douglass, P.O. Box 2181, Little Rock, Arkansas 72203.

17.     Defendant BlueAdvantage Administrators of Arkansas ("BAA") is a corporation of the State of Arkansas with its principal place of business located at 601 S. Gaines Street, Little Rock, Arkansas 72201.  It may be served with process through its registered agent, Lee Douglass, P.O. Box 2181, Little Rock, Arkansas 72203.

18.     Defendant Blue Cross Blue Shield of California is a corporation of the State of California with its principal place of business located at 21555 Oxnard Street, Woodland Hills, California 91367.  It may be served with process through its registered agent, Nancy Flores, 818 West 7th St., # 930, Los Angeles, California 90017.

19.     Defendant Blue Shield of California Life & Health Insurance Company d/b/a Blue Shield of California (together when Blue Cross Blue Shield of California, "BCBS-CA") is a corporation of the State of California with its principal place of business located at 50 Beale Street, San Francisco, California 94105. It may be served with process through its registered agent, Cogency Global Inc., 1325 J Street Suite 1550, Sacramento, California 95814.

20.     Defendant Blue Cross of California d/b/a Anthem Blue Cross is a corporation of the State of California with its principal place of business located at 21555 Oxnard Street, Woodland Hills, California 91367.  It may be served with process through its registered agent, Nancy Flores, 818 West 7th St., # 930, Los Angeles, California 90017.

21.     Defendant Anthem Blue Cross Life and Health Insurance Company (together with Blue Cross of California, "ABCBS-CA") is a corporation of the State of California with its principal place of business located at  located at 120 Monument Circle, Indianapolis Indiana 46204. It may be served with process through its registered agent, CT Corporation System, 818 W 7th St Ste 930, Los Angeles, California 90017.

22.     Defendant Rocky Mountain Hospital and Medical Service, Inc. d/b/a Anthem Blue Cross and Blue Shield of Colorado ("ABCBS-CO" and "BCBS-CO") is a corporation of the State of Colorado with its principal place of business located at 555 Middle Creek Parkway, Colorado Springs, Colorado 80921.   It may be served with process through its registered agent, The Corporation Company, 7700 E. Arapahoe Road Suite 220, Centennial, CO 80112-1268.

23.     Defendant Anthem Health Plans, Inc. d/b/a Anthem Blue Cross and Blue Shield Connecticut ("BCBS-CT" and "ABCBS-CT") is a corporation of the State of Connecticut with its principal place of business located at 370 Bassett Rd., North Haven, Connecticut 06473.   It may be served with process through its registered agent, CT Corporation System, One Corporate Center, Hartford, Connecticut, 06103-3220.

24.     Defendant Highmark BCBSD, Inc. d/b/a Highmark Blue Cross Blue Shield Delaware ("BC-DE") is a corporation of the State of Delaware with its principal place of business located at 800 Delaware Ave., Suite 900, Wilmington, Delaware 19801.   It may be served with process through its registered agent, President, Timothy J. Constantine, at 800 Delaware Ave., Suite 900, Wilmington, Delaware 19801.

25.     Defendant Blue Cross and Blue Shield of Florida, Inc. d/b/a Florida Blue ("BCBS-FL") is a corporation of the State of Florida with its principal place of business located at 4800 Deerwood Campus Parkway, Jacksonville, Florida 32246.   It may be served with process through

its registered agent, CFO, Charles Divita, III, at 200 E. Gaines St., Tallahassee, Florida 32399, or

4800 Deerwood Campus Parkway, Jacksonville, Florida 32246.

26.     Defendant Anthem Insurance Companies, Inc. ("ABCBS-GA" and "ABCBS-IN")

is a corporation of the State of Indiana with its principal place of business located at 120 Monument

Circle, Indianapolis, Indiana 46204-4906.  It may be served with process through its registered

agent, CT Corporation System, 150 West Market Street, Suite 800, Indianapolis, Indiana 46204.

27.     Defendant Blue Cross Blue Shield of Georgia, Inc. ("BCBS-GA") is a corporation

of the State of Georgia with its principal place of business located at 120 Monument Circle,

Indianapolis, Indiana 46204.  It may be served with process through its registered agent, CT

Corporation System, 289 S Culver St., Gwinnett, Lawrenceville, Georgia, 30046-4805.

28.     Defendant Blue Cross of Idaho Health Service, Inc. d/b/a Blue Cross of Idaho is a

corporation of the State of Idaho with its principal place of business located at 3000 E Pine Avenue,

Meridian, Idaho 83642. It may be served through its registered agent, Steven J. Tobiason, 3000 E.

Pine Ave., Meridian, Idaho 83642.

29.     Defendant Blue Cross of Idaho Care Plus, Inc. d/b/a Blue Cross of Idaho (together

with Blue Cross of Idaho Health Service, Inc., "BCBS-ID") is a corporation of the State of Idaho

with its principal place of business located at 3000 E. Pine Ave., Meridian, Idaho 83642.  It may

be served with process through its registered agent, Steven J. Tobiason, 3000 E. Pine Ave.,

Meridian, Idaho 83642.

30.     Defendant Regence BlueShield of Idaho, Inc.  ("BCBS-RID") is a corporation of

the State of Idaho with its principal place of business located at 1602 21st Avenue, Lewiston, Idaho

83501.  It may be served with process through its registered agent, Corporation Service Company,

12550 W Explorer Drive, Suite 100, Boise, Idaho 83713.

31.     Defendant Hallmark Services Corporation is a corporation of the State of Illinois with its principal place of business located at 75 Executive Drive Suite 300. It may be served with process through its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

32.     Blue Cross Blue Shield of Iowa ("BCBS-IA") is a corporation of the State of Iowa with its principal place of business located at 1331 Grant Avenue, Des Moines, Iowa 50309.  It may be served with process through its registered agent, CT Corporation System, 400 E. Court Ave., Des Moines, Iowa 50309.

33.     Defendant Blue Cross Blue Shield of Indiana ("BCBS-IN") is a corporation of the State of Indiana with its principal place of business located at 120 Monument Circle, Indianapolis, Indiana 46204.  It may be served with process through its registered agent, CT Corporation System, 150 West Market St., Suite 800, Indianapolis, Indiana 46204.

34.     Defendant Wellmark, Inc. d/b/a Blue Cross and Blue Shield d/b/a Wellmark Blue Cross and Blue Shield of Iowa d/b/a Blue Cross and Blue Shield of Iowa ("BCBSW-IA") is a corporation of the State of Iowa with its principal place of business located at 1331 Grand Avenue, Des Moines, Iowa 50309.  It may be served with process through its registered agent, CT Corporation System, 400 E. Court Ave., Des Moines, Iowa 50309.

35.     Defendant Blue Cross Blue Shield of Kansas, Inc. ("BCBS-KS") is a corporation of the State of Kansas with its principal place of business located at 1133 Topeka Avenue, Topeka, Kansas 66609.  It may be served with process through its agent, President/CEO, Andrew Corbin, 1133 Topeka Avenue, Topeka, Kansas 66609.

36.     Defendant Anthem Health Plans of Kentucky, Inc. d/b/a Anthem Blue Cross and Blue Shield ("ABCBS-KY") is a corporation of the State of Kentucky with its principal place of

business located at 13550 Triton Park Blvd., Louisville, Kentucky 40223.  It may be served with process through its registered agent, CT Corporation System, 306 W. Main St., Suite 512, Frankfort, Kentucky 40601.

37.     Defendant Louisiana Health Service & Indemnity Company d/b/a Blue Cross Blue Shield of Louisiana ("BCBS-LA") is a corporation of the State of Louisiana with its principal place of business located at 5525 Reitz Avenue, Baton Rouge, Louisiana 70809.  It may be served with process through its registered agent, Michelle S. Calandro, 5525 Reitz Avenue, Baton Rouge, Louisiana 70809.

38.     Defendant BCBS Care First of Maryland ("BCBS Care-MD") is a corporation of the State of Maryland with its principal place of business located at 10455 Mill Run Circle, Owings Mills, Maryland 21117.  It may be served with process through its registered agent, CT Corporation System, 4701 Cox Rd. # 285, Glen Allen, Virginia 23060.

39.     Defendant CareFirst of Maryland, Inc. d/b/a Blue Cross Blue Shield of Maryland ("BCBS-MD" and "BCBS Care-MD") is a corporation of the State of Maryland with its principal place of business located at 1501 S. Clinton Street, Baltimore, Maryland 21224.  It may be served with process through its registered agent, The Corporation Trust Inc., at 351 West Camden Street, Baltimore, Maryland 21201-7912.

40.     Defendant Blue Cross and Blue Shield of Massachusetts, Inc. ("BCBS-MA") is a corporation of the State of Massachusetts with its principal place of business located at 101 Huntington Ave., # 1300, Boston, Massachusetts 02199.  It may be served with process through its registered agent, Donald J. Savery, Attn: Legal Dept., 101 Huntington Ave., # 1300, Boston, Massachusetts 02199.

41.     Defendant Blue Cross Blue Shield of Michigan ("BCBS-MI") is a corporation of the State of Michigan with its principal place of business located at 600 East Lafayette St., Detroit, Michigan 48226.  It may be served with process through its registered agent, Marcia Cypress, 600 East Lafayette St., Dept. 2004, Detroit, Michigan 48226.

42.     Defendant BCBSM, Inc. d/b/a Blue Cross and Blue Shield of Minnesota ("BCBS-MN") is a corporation of the State of Minnesota with its principal place of business located at 3535 Blue Cross Road, Eagan, Minnesota 55122.  It may be served with process through its President, Michael J. Guyette, 3535 Blue Cross Rd., Eagan, Minnesota 55122-1154.

43.     Defendant Blue Cross & Blue Shield of Mississippi, a Mutual Insurance Company ("BCBS-MS") is a corporation of the State of Mississippi with its principal place of business located at 3545 Lakeland Dr., Flowood, Mississippi 39232.  It may be served with process through its registered agent, Cheri D. Green, 3545 Lakeland Dr., Flowood, Mississippi 39232.

44.     Defendant RightCHOICE Managed Care, Inc. d/b/a Anthem Blue Cross and Blue Shield Missouri d/b/a Blue Cross and Blue Shield of Missouri ("BCBS-MO") is a corporation of the State of Delaware with its principal place of business located at 1831 Chestnut Street, St. Louis, Missouri 63103.  It may be served with process through its registered agent, CT Corporation System, 128 South Central Avenue, Clayton, Missouri 63105.

45.     Defendant Blue Cross and Blue Shield of Kansas City ("BCBS-KC") is a corporation of the State of Missouri with its principal place of business located at 2301 Main Street, Kansas City, Missouri 64108.  It may be served with process through its registered agent, Mark A. Newcomer, 2301 Main Street, Kansas City, Missouri 64108.

46.     Defendant Blue Cross and Blue Shield of Nebraska ("BCBS-NE") is a corporation of the State of Nebraska with its principal place of business located at 1919 Ak-Sar-Ben Drive,

13

Omaha, Nebraska 68106.  It may be served with process through its registered agents Gail Sole, P.O. Box 3248, Omaha, Nebraska 68180 and Russell S. Collins, 1919 Ak-Sar-Ben Drive, Omaha, NE 68106.

47.     Defendant Anthem Blue Cross Blue Shield of Nevada ("BCBS-NV" and "ABCBS-NV") is a corporation of the State of Nevada with its principal place of business located at 9133 West Russell Rd., Suite 200, Las Vegas, Nevada 89148.  It may be served with process through its registered agent, The Corporation Trust Company of Nevada, 701 S. Carson St., Suite 200, Carson City, Nevada 89701.

48.     Defendant Anthem Health Plans of New Hampshire, Inc. d/b/a Anthem Blue Cross Blue Shield of New Hampshire ("ABCBS-NH") is a corporation of the State of New Hampshire with its principal place of business located at 3000 Goffs Falls Rd., Manchester, New Hampshire 03111.  It may be served with process through its registered agent, C T Corporation System, 9 Capitol St, Concord, NH, 03301.

49.     Defendant Blue Cross Blue Shield of New Jersey ("BCBS-NJ") is a corporation of the State of New Jersey with its principal place of business located at Three Penn Plaza East, Newark, New Jersey 07105.  It may be served with process through its registered agent, Thomas J. Calvocoressi, Three Penn Plaza East, Newark, New Jersey 07105.

50.     Defendant Horizon Blue Cross and Blue Shield of New Jersey ("HBCBS-NJ") is a corporation of the State of New Jersey with its principal place of business located at Three Penn Plaza East, Newark, New Jersey 07105.  It may be served with process through its registered agent, Thomas J. Calvocoressi, Three Penn Plaza East, Newark, New Jersey 07105.

51.     Defendant Empire HealthChoice, Inc. d/b/a Empire Blue Cross Blue Shield ("BCBS Empire Blue") is a corporation of the State of New York with its principal place of

business located at 1 Liberty Plaza, 165 Broadway, New York, New York 10006.  It may be served with process through the Superintendent of Insurance, New York State Department of Financial Services, Corporate Affairs Unit, One Commerce Plaza, 20th Floor, Albany, New York 12257.

52.    Defendant Healthnow New York Inc. d/b/a Blue Cross and Blue Shield of Western New York, Inc. is a corporation of the State of New York with its principal place of business located at 257 West Genesee Street, Buffalo, New York 14202. It may be served with process through the Secretary of State Rossana Rosado, One Commerce Plaza, 99 Washington Avenue, Albany, NY 12231.

53.    Defendant Blue Shield of Northeastern New York is a corporation of the State of New York with its principal place of business located at 1873 Western Avenue, P.O. Box 15013, Albany, New York 12212. It may be served with process through the Secretary of State Rossana Rosado, One Commerce Plaza, 99 Washington Avenue, Albany, NY 12231.

54.    Defendant Lifetime Healthcare, Inc. d/b/a Excellus BlueCross BlueShield, 165 Court Street, Rochester, NY 14642 d/b/a Excellus BlueCross BlueShield ("Excellus") is a corporation of the State of New York with its principal place of business located at 165 Court St., Rochester, New York 14647.  It may be served with process through the Secretary of State Rossana Rosado, One Commerce Plaza, 99 Washington Avenue, Albany, NY 12231.

55.    Defendant Blue Cross Blue Shield of New York (together with Healthnow New York, Inc. and Blue Shield of Northeastern New York, "BCBS-NY") is a corporation of the State of New York with its principal place of business located at One Liberty Plaza, New York, New York 10006.  It may be served with process through its registered agent, Department of Financial Services, 20th Floor, 1 Commerce Plaza, Albany, New York 12257.

56.     Defendant Blue Cross and Blue Shield of North Carolina ("BCBS-NC") is a corporation of the State of North Carolina with its principal place of business located at 4613 University Drive, Durham, North Carolina 27707.  It may be served with process through its registered agent, N. King Prather, at 4613 University Drive, Durham, North Carolina 27707 and PO Box 2291, Durham, North Carolina, 27702-2291.

57.     Defendant Noridian Mutual Insurance Company d/b/a Blue Cross Blue Shield of North Dakota ("BCBS-ND") is a corporation of the State of North Dakota with its principal place of business at 4510 13th Ave S, Fargo, North Dakota 58121. It may be served with process through its registered agent, C T Corporation System, 314 E Thayer Ave, Bismarck, North Dakota 58501.

58.     Defendant Anthem Blue Cross of Ohio ("ABC-OH") is a corporation of the State of Ohio with its principal place of business located at 4361 Irwin Simpson Road, Mason, Ohio 45040.  It may be served with process through any person who works for the business.

59.     Defendant Blue Cross Blue Shield of Ohio ("BCBS-OH") is a corporation of the State of Ohio with its principal place of business located at 4361 Irwin Simpson Road, Mason, Ohio 45040.  It may be served with process through any person who works for the business.

60.     Defendant Community Insurance Company d/b/a Anthem Blue Cross Blue Shield of Ohio ("ABCBS-OH") is a corporation of the State of Ohio with its principal place of business located at 120 Monument Circle, Indianapolis, Indiana 46204.  It may be served with process through its registered agent, CT Corporation System, 4400 Easton Commons Way Suite 125, Columbus, Ohio 43219.

61.     Defendant Regence BlueCross BlueShield of Oregon ("RBCBS-OR") is a corporation of the State of Oregon with its principal place of business located at 100 S.W. Market

St., Portland, Oregon 97201.   It may be served with process through its registered agent, Corporation Service Company, 1127 Broadway St., NE, Ste. 310, Salem, Oregon 97301.

62.    Defendant Capital BlueCross ("Capital BCBS") is a corporation of the State of Pennsylvania with its principal place of business located at 2500 Elmerton Avenue, Harrisburg, Pennsylvania 17110.   It may be served with process through its officers, Gary D. St. Hilaire, Michael R. Cleary, or Todd A. Shamash, 2500 Elmerton Ave., Harrisburg, Pennsylvania 17177.

63.    Defendant Capital Blue Cross Blue Shield (together with Capital BlueCross, "Capital BCBS") is a corporation of the State of Pennsylvania with its principal place of business located at 2500 Elmerton Ave., Harrisburg, Pennsylvania 17177.   It may be served with process through its registered agent, Michael J. Merenda, 2500 Elmerton Ave., Harrisburg, Pennsylvania 17177.

64.    Capital Hospital Service d/b/a Capital Blue Cross (together with Capital BlueCross and Capital BCBS, "BCBS-PA") is a corporation of the State of Pennsylvania with its principal place of business at 2500 Elmerton Avenue, Harrisburg, Pennsylvania 17177.   It may be served with process through its officers, Michael Cleary or Patricia Wong, 2500 Elmerton Avenue, Harrisburg, Pennsylvania 17177.

65.    Highmark Health d/b/a Highmark Blue Cross Blue Shield d/b/a Highmark Blue Shield ("HBCBS-PA") is a corporation of the State of Pennsylvania with its principal place of business located at Fifth Avenue Place, 120 Fifth Avenue, Pittsburgh, Pennsylvania 15222.   It may be served with process through its officers, David Holmberg, Karen Hanlon, Nanette Detruk, or Thomas Vankirk, Fifth Avenue Place, 120 Fifth Avenue, Pittsburgh, Pennsylvania 15122.

66.    Independence Health Group, Inc. d/b/a Independence Blue Cross is a corporation of the State of Pennsylvania with its principal place of business located at 1901 Market Street,

Philadelphia, Pennsylvania 19103. It may be served with process through its officers, Alan Krigstein, Daniel Hilferty, Thomas Hutton, or Yvette Bright, at 1901 Market Street, Philadelphia, Pennsylvania 19103.

67. QCC Insurance Company (together with Independence Health Group, Inc., "IA BCBS") is a corporation of the State of Pennsylvania with its principal place of business located at 1901 Market Street, Philadelphia, Pennsylvania 19103. It may be served with process with the manager, clerk, or person in charge of any regular place of business, 1901 Market Street, Philadelphia, Pennsylvania 19103.

68. Defendant Blue Cross & Blue Shield of Rhode Island ("BCBS-RI") is a corporation of the State of Rhode Island with its principal place of business located at 500 Exchange St., Providence, Rhode Island 02903.  It may be served with process through its registered agent, Michele B. Lederberg, 500 Exchange St., Providence, Rhode Island 02903.

69. Defendant Blue Cross and Blue Shield of South Carolina ("BCBS-SC") is a corporation of the State of South Carolina with its principal place of business located at 1000 Executive Center Dr., Greenville, South Carolina 29615.  It may be served with process through its registered agent, Duncan S. McIntosh, 2501 Faraway Drive, Columbia, South Carolina 292223.

70. Defendant BlueCross BlueShield of Tennessee ("BCBS-TN") is a corporation of the State of Tennessee with its principal place of business located at 1 Cameron Hill Circle, Chattanooga, Tennessee 37402.  It may be served with process through its registered agent, Anne Hance at 1 Cameron Hill Circle, Chattanooga, Tennessee 37402-9815.

71. Defendant Blue Cross Blue Shield Hallmark (together with Hallmark Services Corporation , "BCBS Hallmark") is a corporation of the State of Texas with its principal place of business located at 1001 E. Lookout Drive, Richardson, Texas 75082.  It may be served with

process through its registered agent, Blue Cross Blue Shield of Texas, 1001 E. Lookout Drive, Richardson, Texas 75082.

72.　　Defendant Blue Cross Blue Shield Highmark ("BCBS Highmark") is a corporation of the State of Texas with its principal place of business located at 1001 E. Lookout Drive, Richardson, Texas 75082. It may be served with process through its registered agent, 1001 E. Lookout Dr., Richardson, Texas 75082.

73.　　Defendant Regence BlueCross BlueShield of Utah ("BCBS-UT") is a corporation of the State of Utah with its principal place of business located at 2890 E Cottonwood Parkway, Cottonwood, Utah 84121. It may be served with process through its registered agent, Corporation Service Company, 15 West South Temple, Suite 1701, Salt Lake City, Utah 84101.

74.　　Group Hospitalization and Medical Services, Inc. d/b/a CareFirst BlueCross BlueShield d/b/a CareFirst Blue Cross Blue Shield ("CareFirst BCBS" and, together with Blue Cross Blue Shield of Virginia, "BCBS-VA") is a Corporation of Washington, DC with its principal place of business located at 840 First St NE, Mail Stop DC 12-08, Washington DC 20065. It may be served with process through its regular agent, CT Corporation System, 1015 15th St. NW, Suite 1000, Washington, D.C. 20005.

75.　　Anthem Health Plans of Virginia, Inc. d/b/a Blue Cross and Blue Shield of Virginia is a corporation of the State of Virginia with its principal place of business located at 2015 Staples Mill Road, Richmond, Virginia 23230. It may be served with process through its registered agent, CT Corporation Systems, 4701 Cox Rd. # 285, Glen Allen, Virginia 23060.

76.　　Defendant Anthem Blue Cross Blue Shield of Virginia (together with Anthem Health Plans of Virginia, Inc., "ABCBS-VA") is a corporation of the State of Virginia with its principal place of business located at 2235 Staples Mill Road, Suite 401, Richmond, Virginia

23230.  It may be served with process through its registered agent, CT Corporation Systems, 4701 Cox Rd. # 285, Glen Allen, Virginia 23060.

77.     Defendant Regence BlueShield ("RBCBS-WA") is a corporation of the State of Washington with its principal place of business located at 7001 220th St., SW, Bldg. 1, Mountlake Terrace, Washington 98043.  It may be served with process through its registered agent, Corporation Service Company, 300 Deschutes Way SW, Suite 304, Tumwater, Washington 98501.

78.     Defendant Premera Blue Cross ("PBCBS" "BCBS-WA Premera" "BCBS Premera" "BCBS-WA")  is a corporation of the State of Washington with its principal place of business located at 7001 220th St., SW, Bldg. 1, Mountlake Terrace, Washington 98043. It may be served with process through its registered agent, C T Corporation System, 711 Capitol Way S Ste 204, Olympia, Washington 98501.

79.     Defendant Highmark West Virginia Inc. ("Highmark-WV") is a corporation of the State of West Virginia with its principal place of business located at 614 Market St., Parkersburg, West Virginia 26101.  It may be served with process through its registered agent, James Fawcett, PO Box 1948, Parkersburg, WV 26102.

80.     Defendant Blue Cross and Blue Shield Association is a corporation of the State of Illinois with its principal place of business at 225 North Michigan Avenue, Chicago, Illinois 60601. It may be served with process through its registered agent, Patrick C. Pope, 225 N Michigan Ave, Chicago, Illinois 60601.

81.     Defendant Blue Cross Blue Shield Anthem National Accounts ("BCBS-ANA") may be served with process through its parent company, Blue Cross and Blue Shield Association, and its registered agent, Patrick C. Pope, 225 N. Michigan Ave., Chicago, Illinois 60601.

## Introduction to the Dispute

82.     Plaintiffs file this Complaint against Defendants because Defendants have engaged in a pattern of drastically underpaying and refusing to pay Victory for healthcare services claims that Victory has submitted to Defendants for reimbursements.  Defendants have consistently and drastically underpaid Victory in amounts in excess of tens of millions of dollars in the aggregate.  Defendants have not paid Victory as required by ERISA, other applicable law, and the governing documents for the healthcare plans directly insured and/or administered by the BCBS Entities (the "BCBS Plans").

83.     Victory consisted of a group of acute care hospitals that provided medical procedures to thousands of insureds of the BCBS Entities.  Defendants failed to appropriately reimburse Victory under the terms of the BCBS Plans, including no reimbursement whatsoever for a significant number of medically-appropriate procedures.  Plaintiffs seek, among other things, damages for the appropriate reimbursement under those plans pursuant to ERISA as well as under Texas common law for breach of contract for those claims for which appropriate reimbursement is sought that are not governed by ERISA.  Moreover, Plaintiffs seek damages based on misrepresentations made by Defendants' representatives as detailed below.

84.     But this proceeding is about more than failing to pay under the terms of the BCBS Plans.  This is also a case about Defendants' scheme to put out-of-network providers out of business.  The BCBS Entities not only used no and under payments to apply this pressure, they also made it nearly impossible for Victory to know if they were being properly paid by refusing to release the plan language that is the basis for payment of the claims.  Only through the bankruptcy process have Plaintiffs been able to discover the extent to which Defendants have failed to pay

according to their obligations under the BCBS Plans by obtaining representative Summary Plan Descriptions ("SPDs").

85.     As part of the bankruptcy process, Plaintiffs have obtained some of the applicable SPDs outlining how Defendants ought to have processed some of the claims at issue in this case. The SPDs currently available to the Plaintiffs show that the claims at issue in this case will be governed generally by the two traditional measures for calculating the benefit amounts for out-of-network providers: some form of a reasonable and customary charge, and some percentage of what Medicare would pay for the same or similar healthcare services.

86.     Moreover, the terms of the SPDs often contradict the terms Victory's representatives were told over the phone by the representatives for the BCBS Entities.  To the extent that the terms of the actual BCBS Plans provided for reimbursements less than the representations provided by the representatives for the BCBS Entities, Victory performed its medical procedures in reliance on the information provided by the representatives for the BCBS Entities that more favorable terms would control.

87.     The BCBS Entities provided health benefit plans and health insurance policies to businesses and individuals throughout the United States, including Texas.  The BCBS Entities' plans and policies include individual health benefit plans and employer-sponsored group health plans.  The BCBS Entities also acted as a third-party administrator ("TPA") for many of these plans.

88.     In many instances, a beneficiary-patient's healthcare benefit plan is governed by the applicable provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq, state law, and the governing healthcare plan documents.  The beneficiary-patient's ERISA health plan is interpreted by the plan administrator, which may be the employer but which

can also be a TPA, such as the BCBS Entities, if the plan sponsor delegates or assigns that authority to the TPA.

89.     Plaintiffs bring this action under ERISA, state law and federal law, and pursuant to the BCBS Plans.  The BCBS Plans at issue allow beneficiary-patients (the "BCBS Subscribers") to obtain healthcare services from facilities that have not entered into contracts with the BCBS Entities (referred to as "out-of-network," or "non-participating" providers) or from facilities that are "in-network" with the BCBS Entities.  At all relevant times, each of the BCBS Entities were the administrator, fiduciary, relevant party-in-interest, and/or the obligor for each of the BCBS Plans they administered.  Each of the BCBS Entities was responsible for making final benefit decisions and the extent of payment on claims submitted by Victory.  For all intents and purposes relevant to this proceeding, each of the BCBS Entities essentially were the BCBS Plans with respect to those each administered.

90.     Under the BCBS Plans and applicable law, the BCBS Entities are required to promptly pay benefits for out-of-network services based on the terms provided in the BCBS Plans. The applicable manner in which benefits are determined is contained in the SPD provided to each BCBS Subscriber.

91.     Under the BCBS Plans, the BCBS Entities are required to pay promptly benefits for out-of-network services based on rates provided in the BCBS Plans.  Depending on the specific BCBS Plan, those rates include:

- Some version of the reasonable and customary rate.

- A percentage of Medicare rates, which varies by plan.

- Other rate(s) as otherwise defined in the applicable plans.

The applicable rate for each BCBS Plan is contained in the SPD provided to each BCBS Subscriber.

92.     With regard to all BCBS Subscribers, prior to or at the time of treatment, as a condition to providing treatment, Victory required that they sign documents whereby Victory obtained an assignment and transfer of causes of action and claims ("Assignment") from each BCBS Subscriber.  Under each Assignment Victory acquired the BCBS Subscriber's benefit rights under the BCBS Plans with respect to both ERISA and non-ERISA governed plans.  Victory did not waive a deductible or co-payment by the acceptance of the Assignment.  As an assignee, Victory obtained standing to sue Defendants under ERISA as well as under other applicable law.

93.     Upon information and belief, the BCBS Entities' management responsibilities for many of the BCBS Plans are memorialized in agreements with the BCBS Plans (those Agreements are referred to herein as "Master Services Agreements"). Pursuant to the Master Services Agreements, the BCBS Entities earned fees for the services they provided.  Upon information and belief, the BCBS Entities earned additional compensation based on "savings" that they achieved for the BCBS Plans, such as the systematic underpayment of Victory's claims.

94.     Despite its best efforts, Victory could not remain in business, in part driven by the lack of appropriate payments by the BCBS Entities.  The Victory entities filed for bankruptcy in June 2015.

95.     The Blue Cross Entities regularly used Blue Cross Blue Shield of Texas as an agent/representative while dealing with Victory. This included, without limitation, much of the verification of coverage and benefits, pre-certifications, administration of claims and appeals, and benefit/payment determinations described herein. Defendants are liable for these acts, omissions, and misrepresentations of their agent/authorized representative, Blue Cross Blue Shield of Texas.

**Additional Factual Background**

## I.     Victory consisted of out-of-network facilities.

96.     Health care providers are either "in-network" or "out-of-network" with respect to insurance carriers.  "In-network" providers are those who contract with health insurers to accept payments in full at rates discounted from their usual and customary charges for covered services in exchange for such insurers steering patients to their facilities and thereby increasing the providers' volume.  "Out-of-network" providers are those that do not have contracts with insurance carriers to accept discounted rates from their usual and customary charges.  Victory was an out-of-network provider.

97.     Victory prominently advised its patients and the public of its out-of-network status. Documents identifying Victory as an out-of-network hospital were provided to patients when they entered the Victory hospitals and when they agree to receive treatment.  In addition, signs in the admitting area of the Victory hospitals informed patients that Victory was an out-of-network hospital.

98.     Defendants charged the BCBS Subscribers higher premiums for the inclusion of "out-of-network" benefits in their BCBS Plans.  BCBS Subscribers may choose an out-of-network provider for a variety of reasons, such as the quality of care and amenities available at a particular facility or access to a specific doctor, as is the patient-beneficiary's choice under the BCBS Plans. Despite the foregoing, and despite Victory's out-of-network status, BCBS Subscribers frequently sought treatment at Victory.

## II.    Victory received a complete Assignment of claims against Defendants for the healthcare services Victory provided to the BCBS Subscribers.

99.     Upon registration at Victory, all patients, including BCBS Subscribers, executed an assignment of claims/benefits form, among other documents.   In the Assignment, BCBS

Subscribers irrevocably and fully assigned to Victory their rights to benefits, claims, and causes of action under the BCBS Plans, including the right to sue the Defendants for benefits and breach of other duties, including fiduciary duties.

100.    In this case there are at issue self-funded plans which the BCBS Entities administer, as well as fully-funded plans which the BCBS Entities issue.  When the BCBS Entities insure a plan directly, as well as when they exercised discretionary authority or control of self-insured plans, the BCBS Entities act as a fiduciary.  The BCBS Entities therefore owed fiduciary duties to all members and subscribers in its ERISA plans and also to Victory's facilities as beneficiaries and assignees of the assignments of benefits and rights executed by the BCBS Subscribers who received services at those facilities.  As the assignee of the BCBS Subscriber, Victory stands in their shoes and has all rights they would have to enforce the terms and benefits of the BCBS Plans.

101.    Upon information and belief, most of the BCBS Plans did not prohibit the BCBS Subscribers from assigning their rights to benefits under the BCBS Plans to Victory, including the right of direct payment of benefits under the BCBS Plans to Victory.

102.    Moreover, to the extent that any of the BCBS Plans prohibited the assignment of benefits to Victory, Defendants have waived any purported anti-assignment provisions, have ratified the assignment of benefits to Victory, and/or are estopped from using any purported anti-assignment provisions against Victory due to their course of dealing with and statements to Victory as an out-of-network provider.  Through the verification process and claim submission (which included a written disclosure of an assignment) the Defendants were aware that the BCBS Subscribers had executed valid assignments in favor of Victory and the Defendants have not raised any anti-assignment concerns.

103.   Additionally, to the extent that any of the BCBS Plans prohibited the assignment of benefits to Victory, any such purported anti-assignment prohibitions are unenforceable as, among other things, contrary to public policy, as adhesion contracts, and/or due to a lack of privity with Victory.

104.   In addition to receipt of the Assignment, before admitting a patient, Victory would contact Defendants by telephone to verify the patient's benefits: that he/she had insurance, that the insurance plan at issue provided for out-of-network benefits, whether there were limitations or exclusions applicable, and what the patient deductible, out-of-pocket maximum, and coinsurance were.  Victory would also ask how the BCBS Plan covering the BCBS Subscriber at issue determined the out-of-network benefits for the procedure(s) at issue.

**III.   Defendants drastically underpaid Victory's claims for reimbursement.**

105.   Victory treated over 1,800 BCBS Subscribers subject to this lawsuit at Victory hospitals and accordingly billed Defendants for the medical services provided to these BCBS Subscribers.  Victory's total charges for these claims was approximately $124,658,215.05 in the aggregate, reflecting the usual and customary fees for the particular medical services provided at Victory.

106.   However, to date, Defendants have reimbursed Victory for only a fraction of this amount—approximately $13,522,840.52 in the aggregate.  Even factoring in amounts that Defendants contend are the patients' responsibility under the applicable BCBS Plans (*i.e.*, the BCBS Subscriber's co-payments, coinsurance, and deductibles), the total payments made by Defendants are a mere fraction of the total usual and customary charges—leaving an unpaid balance due of approximately $47,327,921.35 on these 1863 accounts/claims.[1]

---

[1] Schedule 1 includes a summary of these claims, broken down by facility (*e.g.*, Victory Landmark, Victory Beaumont, etc.), against each Defendant.  Schedule 2 also includes a listing of each individual claim at

107.    Attached hereto as Schedule 1 is a summary of the claims as issue in this lawsuit broken down by each Plaintiff against each Defendant.  Schedule 1 is incorporated herein for all purposes.  The summary provides the aggregate amount of charges, insurance payments, the patient's estimated share (*i.e.*, co-pay, deductible and co-insurance), and balance due (based on the out-of-network benefits under the BCBS Plans) for each of the Victory hospitals and each of the Defendants, as well as the number of BCBS Subscribers' claims.

108.    In violation of their duties under ERISA, the BCBS Plans, and state law, Defendants have: i) failed and refused to pay Victory appropriately for health care services that Victory has provided to BCBS Subscribers who are covered by BCBS Plans; ii) failed and refused to provide a full and fair review of Victory's charges; and iii) failed and refused to provide a meaningful review and appeal process.

109.    Specifically, Victory treated approximately 1,863 BCBS Subscribers at issue in this lawsuit[2] at the Victory facilities and accordingly submitted claims to Defendants for the medical services provided to these BCBS Subscribers.  Victory's aggregate usual and customary charges for these claims was approximately $124,658,215.05 in the aggregate, reflecting the usual and customary charges for the particular medical services provided at the Victory facilities.  Before rendering such services, Victory received coverage verification that the services to be rendered by Victory were covered under the BCBS Plans.  Victory relied on those communications from

---

issue in this case by account number, claim number, and patient initials, and is incorporated herein by this reference.

[2] Victory treated over 4,000 BCBS Subscribers during the relevant time period, but for purposes of this lawsuit, Victory brings claims related to the 1,863 BCBS Subscribers for which Victory was paid 30% or less of Victory's submitted charges.  The BCBS Subscribers at issue in this lawsuit do not include those for which Victory was paid more than 30% of its usual and customary charges.  Victory reserves the right to bring claims relating to the remaining BCBS Subscribers.

Defendants, and without such assurances, Victory would not have provided the proposed medical services to the BCBS Subscribers.

110.    However, to date, Defendants have reimbursed Victory only a fraction of its usual and customary charges and the amounts provided for under the BCBS Plans.  For many BCBS Subscribers, Victory provided treatment but received *zero* (approximately 143 claims with aggregate charges of approximately $7.6 million received zero reimbursement) or *extremely low* (meaning 30% or less of billed charges) reimbursement from Defendants.  Even factoring in amounts that Defendants contend are the patients' responsibility under the applicable BCBS Plans (*i.e.*, the BCBS Subscriber's co-payments, coinsurance, and deductibles), the total payments by Defendants are a mere fraction of Victory's total usual and customary charges.  Defendants' payment shortfalls leave an aggregate unpaid balance of approximately $47,327,921.35 million in the aggregate on these 1,863 accounts/claims.  Defendants' pattern of dramatically underpaying Victory is in clear violation of the terms of the BCBS Plans covering the BCBS Subscribers, as well as state and federal law.

111.    Because of Defendants' practices Victory has been reimbursed in amounts substantially less than what it should have been paid pursuant to the healthcare plans of their subscriber patients and, in some instances, nothing at all.  Defendants pursued standard and uniform policies in making reimbursement determinations in a fashion that conflicted with their contractual obligations under the BCBS Plans and constituted an abuse of discretion.  In addition, Defendants misrepresented to its members/subscribers (i.e., the BCBS Subscribers) and the assignee thereof, Victory, that the methods used to calculate benefits were based on valid data or legitimate reasons.

IV.     **Defendants violate the terms of the BCBS Plans.**

112.    The BCBS Plans provide for payment of Victory's services to BCBS Subscribers at various rates set forth in the applicable BCBS Plans.  Victory's total submitted charges reflect Victory's usual and customary fees for the particular medical services provided at Victory.  The payments Defendants made to Victory (even after factoring in amounts that Defendants contend are the patients' responsibility under the applicable BCBS Plans, such as the BCBS Subscriber's co-payments, co-insurance, and deductibles) fell far short of the reimbursement required under the BCBS Plans.

113.    BCBS Subscribers would choose a Victory facility because of the personal superior quality of service and the hands on service Victory provided.  Infection rates at Victory facilities were extremely low.  Victory provided its patients with unique convenience and highly specialized services.  Victory offered amenities not offered in most hospitals, such as one-on-one nursing care.

114.    Significantly, BCBS Subscribers who sought treatment at Victory paid higher premiums, at times substantially higher premiums, in order to have the right under the BCBS Plans to receive medical treatment from the provider of their choice, including from out-of-network providers such as Victory.  They bargained for and expected that payment be made at the reimbursement rates provided in the BCBS Plans for the rendering of medical treatment for BCBS Subscribers.  Defendants' actual reimbursements to Victory fell far below these reasonable expectations, leaving higher amounts as the patient responsibility.

115.    After providing medical services to a BCBS Subscriber, Victory's facilities would send a claim to the BCBS Entities.  Under the BCBS Plans, the BCBS Entities are supposed to determine the out-of-network benefits for services provided, apply the various metrics discussed in paragraph 91 above, and arrive at a reimbursement under the applicable BCBS Plans.  The BCBS Entities make this determination in the normal course of business.  BCBS exercised

discretionary authority and/or discretionary control over the BCBS Plans which they administered, which the Plan Sponsors, with whom the BCBS Entities had contracts, have unequivocally yielded to the BCBS Entities.

116.    Defendants acted as the plan and claim administrators and as fiduciaries to the beneficiaries for each of the claims at issue in this case.  Defendants exercised discretion, authority, control and oversight in determining if plan benefits would be paid and the amounts of plan benefits that would be paid.  Defendants' administration of these claims resulted in the payment of a just a fraction of usual, customary, and reasonable rates for medical services rendered, and in all cases substantially less than the reimbursement rates required under the BCBS Plans.

117.    The BCBS Entities ignored the BCBS Plans and processed claims according to some methodology not to be found in the BCBS Plans.  Moreover, the BCBS Entities also did not pay anything on a significant portion of claims.

118.    In addition to underpayments or zero payments, Defendants engaged in other conduct that delayed or reduced payments to Victory in violation of the BCBS Plans and the law, including but not limited to:

- "Zero payments" – where Defendants paid Victory nothing at all despite Victory providing treatment to BCBS Subscribers.

- "No written explanation" – where Defendants failed to provide a written explanation for situations where they did not pay the full amount billed or did not pay in accordance with the applicable BCBS Plan.

- "Inaccurate reasons provided" – where Defendants justified non-payment or inadequate payment based on inaccurate reasons.

- "Misinterpretation" – where Defendants admit to having misinterpreted its BCBS Plan documents when paying charges, resulting in non-payment or underpayment, but then refuse to correct the payment.[3]

---

[3] Defendants were consistently slow to correct mistakes and underpayment with Victory, even in those few cases where Defendants did make corrections.  Defendants would delay the process and drag out even those

- "Skewed Fee Schedules" – where Defendants used fee schedules and other metrics to determine allowable amounts under the BCBS Plans when such fee schedules and other metrics were skewed heavily in BCBS's favor and did not represent accurate and fair data upon which to determine the allowable amount.

- "Inappropriate offsets" – where Defendants "offset" past payments they actually made to Victory by offsetting those payments against future claims, resulting in low or zero paid on the subsequent invoice(s).[4]

- "Failing to refer to the plan" – where Defendants would tell Victory that they did not have the plan document available to confirm how claims were processed and/or paid.

119.    Victory has provided Defendants with all information necessary to adjudicate and process the claims at issue.  Yet, even after Victory's repeated requests, Defendants have refused to correct blatant underpayments and cease their wrongful conduct.

120.    Defendants have wrongly failed to pay in accordance with the terms of the BCBS Plan documents.  Defendants have also wrongly made claim determinations without valid or appropriate data and/or without adequate reasons to support reduced payments.  Defendants' method of processing Victory's claims was disingenuous and arbitrary, and resulted in Defendants severely underpaying Victory's claims.

121.    Defendants' arbitrary method of determining and paying claims ignored the requirements of the BCBS Plans, as well as the history of claim processing between Defendants and Victory.  Defendants' benefit decisions were not reasonable, nor were they supported by the evidence available to Defendants.  Moreover, such decisions were arbitrary and made in bad faith.

---

payments which were corrected for Victory.  But when Defendants believed that they had overpaid a claim, Defendants would immediately take action to "recoup" the overpayment.

[4] The result was a *de facto* adverse benefits determination on the account against which Defendants "offset" the charges and, potentially, also as to the account "paid" by these "offsets." But, in violation of ERISA, Defendants failed to provide an adequate explanation of benefits for the "offset" charges. Moreover, the "offsets" were not authorized, not supported by any agreement or law, and were an improper and unlawful self-help remedy.

122.    The BCBS Plan documents specify how Defendants are required to pay out-of-network healthcare providers.  But Defendants have failed to comply with those requirements when processing claims and/or paying (or failing to pay) Victory.  Either Defendants wholly failed to comply with the BCBS Plan requirements or their interpretation of the payment provisions in the BCBS Plans was arbitrary and an abuse of discretion.

**V.    Victory exhausted available internal appeals remedies.**

123.    Victory has used all reasonable efforts to exhaust available appeals avenues under the BCBS Plans and followed applicable appeal procedures to convince Defendants to reimburse Victory properly on the claims for medical services that Victory provided to the BCBS Subscribers.

124.    Despite exhausting the appeal procedures, Defendants have failed to reimburse Victory for the health care services Victory provided to BCBS Subscribers, and approximately $47.3 million in the aggregate remains due and owing to Victory for these services.

125.    Defendants routinely denied appeals without any meaningful explanation and in some cases they failed to respond to the appeal at all.  Moreover, despite Victory's appeals, Defendants have failed to adequately explain the basis for their dramatic underpayments to Victory as required by applicable law.  In particular, Defendants have failed or refused to: (a) provide written notice of benefit determinations within ninety (90) days of claim submission; (b) provide the specific reason or reasons for the denial of claims; (c) provide the specific plan provisions relied upon to support the denials; (d) provide the specific rule, guideline or protocol relied upon in making the decision to deny claims; (e) describe any additional material or information necessary to perfect a claim, such as the appropriate diagnosis/treatment code; and/or (f) notify the relevant parties that they are entitled to have, free of charge, all documents, records and other information relevant to the claims for benefits.

126.    Other examples of Defendants' failure to follow appropriate claims processing procedures include:

- Form letter denials where the reason for the denial is left blank;

- Form letter denials where the reason for the denial does not address in any way the basis for Victory's appeal;

- Failing to respond to an appeal far longer than provided for under ERISA, then belatedly issuing a denial based on the untimely filing of appeals which were timely filed;

- Denying groups of claims together by deeming them paid correctly and never addressing the individual bases for the separate appeals.

- Advising their customer service representatives not to release plan language to providers to ensure that the providers remain in the dark over what the appropriate reimbursement should be and the fact that the BCBS Entities were not reimbursing according to plan terms.

- Failing to timely process correct claims and leaving open superseded claims so that when the corrected claim is finally processed it is denied as a "duplicate claim" because the original claim was left open.

127.    The foregoing tactics in many instances essentially prevented Victory from complying with all appeal procedures.  In cases where the internal appeal process may not have been exhausted, full exhaustion is excused because Defendants deprived Victory of meaningful access to administrative remedies and/or further attempts to appeal would have been futile.  For example, Defendants failed to follow claims procedures required under ERISA §503, and the Department of Labor's regulatory requirements in 29 C.F.R. § 2560, 503-1(f) and (g)(1), as described above.  In addition, Defendants repeatedly denied claims aggregating more than tens of millions of dollars and refused to provide the information necessary for Victory to make an appropriate appeal.  Victory had exhausted its appeals on a substantial number of such claims and, in light of Defendants' repeated failure to offer any meaningful administrative process for

challenging their denials of these claims, it was simply futile for Victory to pursue administrative appeals as to the remaining claims.

## VI.    Misrepresentations

128.    Before performing services on BCBS Subscribers, Victory received verification of benefits from the BCBS Entities.  Victory would verify the insured's benefit levels and that no exclusions applied.  As part of that process, many times the BCBS Entities would provide the basis upon which they would determine the out-of-network benefits.  As noted above, discovery in the bankruptcy has revealed that the BCBS Entities would often provide a basis that was more advantageous to Victory than the actual terms contained in the applicable plan for determining the allowed amount.  For example, on many occasions BCBS would verity that the out-of-network benefits would be determined by the hospital's usual and customary charge or some form of reasonable and customary rate.  Victory subsequently learned that the BCBS Plans provided for a different method of determining the out-of-network benefits which produced a lower overall reimbursement than would the usual and customary or reasonable and customary methods that were verified.

129.    In such instances, Victory has a separate cause of action for the difference between the actual amount of reimbursement, if any, and the amount represented by BCBS' representatives to Victory during verification.

130.    By confirming coverage in this manner, the BCBS Entities made a clear and definite promise to Victory as to the way out-of-network benefits would be determined and paid. These unambiguous promises constitute obligations the BCBS Entities owe to Victory independent of the obligations the BCBS Entities owe under the applicable BCBS Plans.

131.    Victory did not have access to any of the applicable plans covering the BCBS Subscribers and therefore had to rely upon the information provided by the BCBS Entities'

representatives in order to determine whether and at what amounts Victory would be reimbursed for services performed for BCBS Subscribers.

132.    Based upon these representations, Victory provided services to the BCBS Subscribers.  Victory's reliance on these representations was foreseeable to the BCBS Entities. Through their communications with Victory, the BCBS Entities knew that Victory was attempting to determine coverage information for BCBS Subscribers.  And so, Victory reasonably relied upon these representations in providing medical services to the BCBS Subscribers.

133.    Victory's reliance upon the BCBS Entities' coverage and benefit payment promises was detrimental to Victory's business operations and cash flow.  After providing these medical procedures to BCBS Subscribers, Victory submitted proper claims to the BCBS Entities for payment of benefits in accordance with representations made by BCBS Entities.

134.    Despite their obligation to pay each claim, the BCBS Entities failed, and continue to fail, to pay Victory consistent with the representations made by its agents and its unambiguous promise to pay for the services provided to its members.  The BCBS Entities are required to pay Victory consistent with the statements made to Victory while confirming coverage and benefits.

135.    As a direct and proximate result of its reliance on the BCBS Entities' unambiguous representations, Victory has been harmed in excess of $34.5 million dollars in the aggregate in connection with approximately 807 claims for which the BCBS Entities' representatives verified that the out-of-network benefits would be determined by the usual and customary charges or reasonable and customary rates.  Attached hereto is Schedule 3[5] that includes a summary of these claims broken down by facility.  Schedule 3 is incorporated herein for all purposes.

_____

[5] Schedule 3 includes a summary of these claims broken down by facility against each BCBS Entities.  Schedule 4 also includes a listing of each individual claim for which Victory asserts a

**VII.    The BCBS Entities' Failure to Provide Plan Documents**

136.    The civil enforcement section of ERISA, particularly 502(c), codified at 29 U.S.C. § 1132(c)(1)(B), provides that a participant or beneficiary is entitled to request claims rejection information from the administrator. If the administrator does not provide the information within thirty days, the administrator may be liable for up to $100 a day, per claim. As noted above, the BCBS Entities acted as the claims administrator and thus are liable for the penalties for failure to produce the requested documents.

137.    Victory has requested from the BCBS Entities both plan and plan associated documents on claims made by Victory. The BCBS Entities have refused to provide these documents. Victory is entitled to the requested plan documents and associated documents. Victory is also entitled to a civil penalty of $100 per day for the failure to timely comply with the request under 29 U.S.C. § 1132(c), until the documents are produced.

**Causes of Action**

**I.    Breach of Plan provisions for benefits in violation of ERISA.**

138.    Plaintiffs incorporates herein the preceding paragraphs.

139.    Victory (and the Plaintiffs) has standing to pursue claims under ERISA as an assignee of the BCBS Subscribers' claims under the BCBS Plans.

140.    As the assignee of the BCBS Subscribers under the BCBS Plans, Victory is entitled to reimbursement under the ERISA Plans for the hospital services provided to the BCBS Subscribers at the Victory facilities.

---

claim for misrepresentation by account number, claim number, and patient initials, and is incorporated by this reference.

141.    All of the Plans require reimbursement of medical expenses incurred by BCBS Subscribers at the rates described in BCBS Plans.  Each of the BCBS Entities acted as a fiduciary to its beneficiaries, including Victory as assignee, because they exercised discretion in determining whether plan benefits would be paid, and/or the amounts of plan benefits that would be paid, to those plan beneficiaries.  As a fiduciary under ERISA, each of the BCBS Entities is subject to a civil action under § 502(a) of ERISA.  In violation of ERISA, Defendants have breached the terms of the BCBS Plans by refusing to make out-of-network reimbursements for charges covered by the BCBS Plans at the applicable rates set forth in the BCBS Plans in violation of ERISA 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).  These breaches include, among other things, refusing to pay the usual and customary charges, and/or reasonable and customary rates, or the prevailing fees or recognized charges or such other rates expressly provided in the BCBS Plans, for medically-necessary procedures and services performed at the Victory facilities for the BCBS Subscribers. Defendants' failure to reimburse Victory for healthcare services provided to the BCBS Subscribers was unreasonable and arbitrary.  Defendants abused whatever discretion the BCBS Plans may have provided Defendants.

142.    Moreover, Defendants' rights under the Master Services Agreement to receive a portion of any "savings" caused Defendants to self-deal by acquiring private benefits in exchange for paying too little benefits on behalf of the plan beneficiaries. These rights further gave Defendants a powerful incentive to wrongfully deny or underpay benefits that would have otherwise gone to Victory, thereby incentivizing Defendants to abuse their discretion.

143.    As a result of, among other acts, Defendants' numerous procedural and substantive violations of ERISA, any appeals are deemed exhausted or excused, and Plaintiffs are entitled to have this Court undertake a *de novo* review of the issues raised herein.

144.     Pursuant to 29 U.S.C. § 1132(a)(1)(B), Plaintiffs are entitled to recover unpaid/underpaid benefits from Defendants.  The attached Schedules 1 and 2 state the amount each of the Plaintiffs seek from each of the Defendants for unpaid/underpaid benefits.  The aggregate amount is in excess of $47.3 million.  Plaintiffs are also entitled to declaratory and injunctive relief to enforce the terms of the Plans, as well as attorneys' fees.

## II.     Denial of full and fair review and claims procedures in violation of ERISA.

145.     Plaintiffs incorporate herein the preceding paragraphs.

146.     As an assignee of the BCBS Subscribers' claims, Victory is entitled to receive protection under ERISA, including (a) a "full and fair review" of all claims denied by Defendants; and (b) compliance by Defendants with applicable claims procedure regulations.

147.     Although Defendants are obligated to provide a "full and fair review" of denied claims pursuant to ERISA § 503, 29 U.S.C. § 1133 and applicable regulations, including 29 C.F.R. § 2560.503-1 and 29 C.F.R. § 2590.715-2719, Defendants have failed to do so by, among other actions: refusing to provide written notice of benefit determinations within ninety (90) days of claim submission; refusing to provide the specific reason or reasons for the denial of claims; refusing to provide the specific plan provisions relied upon to support its denial; refusing to provide the specific rule, guideline or protocol relied upon in making the decision to deny claims; refusing to describe any additional material or information necessary to perfect a claim, such as the appropriate diagnosis/treatment code; and/or refusing to notify the relevant parties that they are entitled to have, free of charge, all documents, records and other information relevant to the claims for benefits; and refusing to provide a statement describing any voluntary appeals procedure available, or a description of all required information to be given in connection with that procedure.

By failing to comply with the ERISA claims procedures regulations, Defendants failed to provide a reasonable claims procedure.

148.    Moreover, Defendants' rights under the Master Services Agreements to receive a portion of any "savings" gave Defendants a strong incentive to provide unfair review and claims procedures in order to maximize Defendants' own financial gain at Victory's expense.

149.    Because Defendants have failed to comply with the substantive and procedural requirements of ERISA, any administrative remedies are deemed exhausted pursuant to 29 C.F.R. § 2560.503-1(l) and 29 C.F.R. § 2590.715-2719(b)(2)(ii)(F)(1).   Exhaustion is also excused because it would be futile to pursue administrative remedies, as Defendants do not acknowledge any basis for their denials and thus offer no meaningful administrative process for challenging their denials.

150.    Victory has been harmed by Defendants' failure to provide a full and fair review of appeals submitted under ERISA § 503, 29 U.S.C. § 1133, and by Defendants' failure to disclose information relevant to appeals and to comply with applicable claims procedure regulations. Defendants further violated the applicable claims procedure regulations by engaging in conduct that rendered their claims procedure and appeals process unfair to the BCBS Subscribers, and their assignee (i.e. Victory).

151.    Plaintiffs are entitled to relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), including declaratory and injunctive relief, to remedy Defendants' failures to provide a full and fair review, to disclose information relevant to appeals, and to comply with applicable claims procedure regulations.

**III.    Breach of contract, non-ERISA.**

152.    Plaintiffs incorporate herein the preceding paragraphs.

153.   To the extent that some of the BCBS Plans are not employee welfare benefit plans governed by ERISA, they are nonetheless valid and enforceable insurance contracts.

154.   As set forth more fully above, all the BCBS Plans require reimbursement of medical expenses incurred by BCBS Subscribers at specified rates.  Further, under the terms of the BCBS Plans, BCBS Subscribers are entitled to coverage for the services that they received from Victory.

155.   Pursuant to the "Assignment of Benefits" forms executed by BCBS Subscribers, Victory was assigned the right to receive reimbursement under the BCBS Plans for the services that it rendered to the BCBS Subscribers.  Pursuant to said assignments, Defendants are contractually obligated to reimburse Victory for these services.

156.   Defendants failed to make payment of benefits to Victory in the manner and amounts required under the terms of the BCBS Plans.

157.   As the result of Defendants' failures to comply with the terms of the BCBS Plans, Victory, as assignee, has suffered damages and lost benefits, for which Plaintiffs are entitled to damages from Defendants, including unpaid benefits, restitution, interest, and other contractual damages sustained by Victory.

158.   As a result of Defendants' breaches of contract, Plaintiffs have incurred attorneys' fees and costs, which it is entitled to recover against Defendants.

**IV.    Breach of duty of good faith and fair dealing, non-ERISA.**

159.   Plaintiffs incorporate herein the preceding paragraphs.

160.   As set forth more fully above, with respect to the BCBS Plans that are not employee welfare benefit plans governed by ERISA, they are nonetheless valid and enforceable insurance contracts.  As such, the BCBS Plans contain an implied duty of good faith and fair dealing.

161.    Defendants, as the obligors under the BCBS Plans, owed the BCBS Subscribers a duty of good faith and fair dealing with respect to said BCBS Plans.

162.    As set forth more fully above, the BCBS Subscribers received health care services at Victory and executed "Assignment of Benefit" forms, among other documents, in which they assigned to Victory their right to benefits under the BCBS Plans for the services that Victory provided to the BCBS Subscribers.

163.    By virtue of these assignments, Defendants also owe this duty of good faith and fair dealing to Victory.

164.    Defendants breached their duty of good faith and fair dealing owed to BCBS Subscribers and Victory, as assignee of rights and benefits under the BCBS Plans, in a number of ways, described more fully above.

165.    Without limitation, Defendant's breaches include, but are not limited to, the following:

i.      Defendants' inadequate reimbursement to Victory relative to Victory's charges for the health care services Victory provided to the BCBS Subscribers, when Defendants' liability for those amounts was reasonably clear;

ii.     Defendants' failures to provide Victory with adequate written explanations for the failure to reimburse all or a portion of Victory's claims for the services provided to BCBS Subscribers;

iii.    Defendants' failures to reimburse Victory's charges for the health care services provided to the BCBS Subscribers, and their failures to provide adequate written explanations for the failure to pay all or a portion of such claims, within the statutorily prescribed time frames;

iv.     Defendants' arbitrary methodology for determining whether and the amount to reimburse Victory for the services Victory provided to BCBS Subscribers;

v.      Defendants' patently inadequate explanations for their under-reimbursements to Victory; and

42

vi. Defendants' accepting additional compensation in exchange for creating "savings" by wrongfully denying or underpaying benefits that otherwise should have gone to Victory.

166. Defendants' conduct in derogation of their duty of good faith and fair dealing under the BCBS Plans has deprived Victory of its reasonable expectations and benefits as assignee of benefits under the BCBS Plans, and Plaintiffs sue for such amounts.

## V.   Breach of fiduciary duty.

167. Plaintiffs incorporate herein the preceding paragraphs.

168. At all relevant times, Defendants were the insurer, plan administrator, claim administrator, fiduciary, relevant party-in-interest, and/or the obligor for the BCBS Plans.  As such, Defendants owed and still owe the BCBS Subscribers fiduciary duties under the BCBS Plans.

169. As set forth more fully above, BCBS Subscribers have received health care services at Victory and executed "Assignment of Benefits" forms, among other documents, in which they assigned to Victory their rights to benefits under the BCBS Plans for the services that Victory provided to the BCBS Subscribers and any claim they may have for breach of fiduciary duty.

170. By virtue of these assignments, Defendants also owed and owe this fiduciary duty to Victory.

171. Defendants breached their fiduciary duties owed to Victory in a number of ways, described more fully above.  For example, each of the BCBS Entities breached its duties to Victory as assignee by not paying and underpaying claims not in accordance with the terms of the applicable plans, and doing so in an arbitrary fashion.  Specifically, each of the BCBS Entities acted as a fiduciary to Victory as assignee because they exercised discretion is determining whether plan benefits would be paid, and if so, at what amount.  The exercise of discretion in such determinations of plan benefits is an inherently fiduciary function that must be carried out in

accordance with the terms of the applicable plans, not in a manner to maximize the interests of the BCBS Entities.

172.     By engaging in such conduct described above, each of the BCBS Entities failed to act with the care, skill, prudence and diligence that a prudent plan administrator would use in the conduct of an enterprise of like character or to act in accordance with the documents and instruments governing the applicable plans.   ERISA §§ 404(a)(1)(B) and (D), 29 U.S.C. §§ 1104(a)(1)(B) and (D).

173.     As a fiduciary of group health plans under ERISA, each of the BCBS Entities owes beneficiaries a duty of loyalty, defined as an obligation to make decisions in the interest of beneficiaries, and to avoid self-dealing or financial arrangements that benefit the fiduciary at the expense of the beneficiaries.   Each of the BCBS Entities violated its fiduciary duty of loyalty by, among other things, determining whether plan benefits would be paid, and/or determining the amounts of plan benefits that would be paid, to those plan beneficiaries based on maximizing benefits to itself rather than making determinations under the terms of the applicable plans.   In addition, each of the BCBS Entities made unilateral and unauthorized offsets across BCBS Plans to the detriment of the BCBS Subscribers and Victory, as an assignee.

174.     Moreover, Defendants engaged in self-dealing and breached their duty of loyalty when they accepted additional compensation for creating "savings" by wrongfully denying or underpaying benefits that should have otherwise gone to Victory.

175.     Victory is entitled to relief for each Defendants' violation of its fiduciary duties under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), including restitution, injunctive and declaratory relief, and its removal as a breaching fiduciary.

176.     As the result of Defendants' violations of their fiduciary duties to Victory, Victory has suffered, substantial damages, and Plaintiffs now sue for all such amounts.

## VI.     Promissory estoppel.

177.     Plaintiffs incorporate herein the preceding paragraphs.

178.     Defendants represented to Victory that the medical treatment sought by the BCBS Subscribers at Victory was a covered procedure under the BCBS Plans, and that the fees associated with that treatment were covered charges under the BCBS Plans.  Based on Defendants' statements that the patients seeking medical care and treatment had active coverage and benefits, Victory reasonably understood that some payment would be forthcoming for the hospital services provided at Victory related to these procedures.

179.     Victory provided hospital services to those BCBS Subscribers in reliance on Defendants' statements regarding coverage and benefits.  In the absence of Defendants' statements that they would make remuneration for the fees associated with this treatment, Victory would not have provided the hospital services.  This reliance was foreseeable as Defendants' representations were made in the context of telephone calls from Victory's billing agents to verify and pre-certify coverage prior to the hospital services being provided, and there was no ability for Victory to learn, separate and apart from Defendants' representations, whether Defendants considered the fees related to these hospital services to be covered charges under the BCBS Plans.

180.     As a result of Victory's reliance on Defendants' statements, Victory has suffered and continues to suffer injury, including money damages, and injustice can only be avoided by Defendants honoring their previous promises.

## VII.    Negligent misrepresentation.

181.     Plaintiffs incorporate the preceding paragraphs.

182.    On a number of occasions, Defendants represented to Victory that certain BCBS Subscribers had benefits under the BCBS Plans; that there were no applicable exclusions; and that the relevant medical services were pre-certified and in some cases pre-authorized.

183.    In addition, on many occasions, Defendants would provide to Victory the basis under which the BCBS Plan at issue determined out-of-network benefits when the BCBS Plan actually provided for such benefits to be determined in a manner contrary to what was represented to Victory.  With respect to approximately 807 claims, the BCBS Entities' representatives verified to Victory and negligently misrepresented that Victory's healthcare services would be reimbursed at usual and customary charges or reasonable and customary rates.

184.    Victory relied on each of these representations and provided medical services to the BCBS Subscribers.  The representations and omissions made by the Defendants were (i) made in the course of their business or in connection with a transaction in which they had a pecuniary interest, (ii) false information provided for Victory's guidance and, (iii) made without the exercise of reasonable care or competence in obtaining and/or communicating the information.  Victory detrimentally relied upon the representations from Defendants of the BCBS Subscribers' precertification and that Victory would be compensated for its healthcare claim as verified/represented under the BCBS Plan when submitted.  These acts and omissions of the Defendants constitute negligently false representations.  Because of its reliance on Defendants negligently false representations, Victory has been directly and proximately injured in the sum of at least $34.7 million in the aggregate.  If Victory had known that the Defendants' representations were false, Victory would not have agreed to provide the services to BCBS Subscribers.  The claims covered by this cause of action are shown on the attached Schedules 3 and 4.

## VIII.   Insurance Code violations.

185.   Victory incorporates and re-alleges the allegations set forth above.

### i.       *Overview of claims.*

186.   It is common practice and customary in the health care industry for health insurance companies, health plans, PPOs, etc., to issue insurance cards which have printed thereon pertinent contact information for the insurance verification agents of insurance companies to verify insurance coverage and benefit levels to hospitals.   Using these insurance cards, hospitals call insurance verification agents to verify the following important information:

- to confirm that an individual has benefits under a health plan/insurance policy;

- to discover what coverage and level of benefits are available to an individual; and

- to discover where the hospital should submit its claim for payment, if the hospital makes the financial decision to accept that particular coverage and level of benefits and provides the care in question to that individual/prospective patient.

187.   Hospitals have no other means of verifying coverage and benefits for a prospective patient other than calling an insurance verification agent.   Therefore, it is pivotal that the insurance verification agents hired by an insurance company or plan are well qualified, well trained, and well supervised individuals, who are capable of consistently communicating ***clearly*** and ***accurately*** all of the pertinent coverage and benefit information to the hospitals.   It is well known in the industry that hospitals must be able to rely upon the coverage and benefit information provided by the insurance verification agents in making the very important financial decision of whether to provide expensive healthcare services to a prospective patient.   If the information provided by an insurance verification agent to the hospitals is ***inaccurate*** or ***incomplete***, the hospitals can be severely damaged financially.   For decades Texas courts have taken judicial notice of these commercial

realities, customs, and routine practices. *See Hermann Hospital v. National Standard Ins.*, 776

S.W.2d 249, 254 (Tex. App.—Houston [1st Dist.] 1989, no writ) (holding that hospitals can sue

to recover the hospital's damages proximately caused by insurance companies' misrepresentations

about the health coverage and benefits available to hospitals for their treatment of patients).

188.    Defendants pre-certified the BCBS Subscribers' benefits under the BCBS Plans and

certified that the medical services were medically necessary; no exclusions applied; the benefit

levels covered the amount of the projected healthcare costs; and that Victory would be

compensated for its services.   However, the insurance verification agents of the Defendants

provided *inaccurate, incomplete* and *untimely information* to Victory.  In addition, in many cases

Defendants represented to Victory that the allowed amount of benefits would be calculated on the

basis of usual and customary charges or reasonable and customary rates when, in fact, the BCBS

Plan at issue provided a wholly different manner in which to determine the benefits.  Defendants'

insurance verification agents provided *inaccurate, incomplete* and *untimely information* to

Victory.  These acts and failures to act constitute multiple violations of the Texas Insurance Code

for which the Defendants are liable.

189.    Victory, as assignee and successor of the BCBS Subscribers, brings this cause of

action for injuries caused by the Defendants acts in violation of Tex. Ins. Code §§ 541.051,

541.052, 541.060; and 542.046(a).

*ii.*    *Violations of Texas Insurance Code.*

190.    Plaintiffs' cause of action arises out of the following violations of the Texas

Insurance Code:

A.    Texas Insurance Code, § 541.051, as follows:

make, issue, or circulate or cause to be made, issued or circulated, an
estimate, illustration, circular or statement representing with respect to a

policy issued or to be issued the terms of the policy, benefits or advantages promised by the policy.

B.    Texas Insurance Code, § 541.052, as follows:

make, publish, disseminate, circulate, or place before the public or directly or indirectly causing to be made, published, disseminated, circulated, or placed before the public an advertisement, announcement, or statement containing an untrue, deceptive, or misleading assertion, representation, or statement regarding the business of insurance of a person in the conduct of the person's insurance business.

C.    Texas Insurance Code, § 541.060, as follows:

(a) and (b):   It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to misrepresent to a claimant a material fact or policy provision relating to coverage at issue.

191.   Victory has suffered actual damages as a result of these violations of the Texas Insurance Code in a sum of at least $34.7 million, for which Victory sues the Defendants.

192.   Defendants knowingly committed each of the foregoing acts with actual knowledge of the falsity, unfairness, or deception of the foregoing acts and practices in violation of the Texas Insurance Code.

193.   Victory would show that as the Defendants' conduct was committed "knowingly," Victory is entitled to three (3) times the actual damages as provided under Texas Insurance Code § 541.152, plus reasonable attorney's fees, and costs of suit, all for which amount Plaintiffs hereby seek relief.

194.   Defendants' conduct as alleged above has made it necessary for Plaintiffs to employ the undersigned attorney to represent it in this lawsuit, thus entitling Plaintiffs to recover its reasonable and necessary attorney's fees in this action under Tex. Ins. Code § 542.060(a)-(b) for which amount Plaintiffs hereby seek relief.

195.   Plaintiffs would show that all conditions precedent have been performed, or excused or otherwise satisfied.   Plaintiffs would further show that any technical notice requirement, if any existed, should be deemed waived and further excused since imposing such would cause an extreme hardship and such technical requirement is not an essential part of the contract.

196.   Additionally, if declaratory relief becomes necessary, Plaintiffs request that it be awarded his costs and reasonable and necessary attorney's fees on its behalf incurred pursuant to Tex. Civ. Prac. & Rem. Code § 37.009.

**IX.   Unjust enrichment, and money had and received.**

197.   Plaintiffs incorporate herein the preceding paragraphs.

198.   Plaintiffs have conferred upon Defendants the benefit of providing treatment to BCBS Subscribers.

199.   By underpaying Plaintiffs for the treatment that Plaintiffs provided to BCBS Subscribers, Defendants have been unjustly enriched to the extent that Defendants received and/or retained any portion of those "savings" of benefits that should have otherwise been paid to Victory

200.   As the result of Defendants unlawful, unjust, and wrongful acts, Victory suffered and continues to suffer damages, and it is owed restitution from Defendants, and Plaintiffs now sue for all such amounts.

**X.   ERISA Penalties and Exemplary Damages.**

201.   Victory incorporates and re-alleges the allegations set forth above.

202.   Each of the BCBS Entities' failure to comply with the requests for plan information pursuant to 29 U.S.C. § 1132(c)(1) as described above subjects it to civil penalties in the amount

of $100 per claim per day for such failure and refusal to provide the requested documents. As such, Victory is entitled to the requested documents and to the $100 per claim per day civil penalty.

203. As described above, the BCBS Entities' actions and omissions regarding the payment of Victory's valid claims was a direct and proximate cause of its bankruptcy. The BCBS Entities' willful and intentional acts were committed with malice, justifying the imposition of punitive and exemplary damages, in an amount within of the jurisdictional limits of the Court.

## XI.    Attorneys' Fees.

204. Victory incorporates and re-alleges the allegations set forth above.

205. Pursuant to ERISA, Tex. Bus. & Comm. Code §§ 38.001, et seq., the Tex. Civ. Prac. & Rem. Code, and Fed. R. Civ. P. 54(c), Victory is entitled to an award of attorneys' fees.

### Conditions Precedent

206. All conditions precedent to Plaintiffs' recovery and claims have been performed or have occurred.

### Jury Demand

207. Plaintiffs demand a jury trial for all causes of action for which they have a right to a jury trial.

### Conclusion & Prayer

Wherefore, Plaintiffs demand judgment in its favor against Defendants as follows:

i.    Declaring that Defendants have breached the terms of the BCBS Plans with regard to out-of-network benefits and awarding damages for unpaid out-of-network benefits for the amounts set forth on Schedules 1 and 2 attached hereto, as well as awarding injunctive and declaratory relief to prevent Defendants' continuing actions detailed herein that are unauthorized by the BCBS Plans;

ii.    Declaring that Defendants failed to provide a "full and fair review" under § 503 of ERISA, 29 U.S.C. § 1133, and applicable claims procedure regulations, and that "deemed exhaustion" under such regulations is in effect as a result of Defendants' actions, as well as awarding injunctive,

declaratory and other equitable relief to ensure compliance with ERISA and its claims procedure regulations;

iii.     Awarding damages based on Defendants' breach of contract with respect to claims covered under BCBS Plans not governed by ERISA;

iv.     Awarding damages based on Defendants' misrepresentations and nondisclosures regarding the existence of benefits for hospital services based on promissory estoppel;

v.     Awarding damages based on Defendants' negligent misrepresentations regarding the method upon which Victory's reimbursements would be calculated under the BCBS Plans with respect to these claims identified on Schedules 3 and 4 attached hereto;

vi.     Awarding damages based on Defendants' violations of the Texas Insurance Code, including treble damages for knowing violations;

vii.     Awarding lost profits, contractual damages, and compensatory damages in such amounts as the evidence at trial shall show;

viii.     Awarding exemplary damages for Defendants' intentional and tortious conduct in such amounts as will be shown;

ix.     Awarding restitution for reimbursements improperly withheld, set off, or recouped by Defendants;

x.     Declaring that Defendants have violated the terms of the relevant plans and/or policies of insurance covering the BCBS Subscribers;

xi.     Requiring Defendants to make full payment on all previously denied charges relating to the BCBS Subscribers;

xii.     Requiring Defendants to pay Victory the benefit amounts as required under the BCBS Plans;

xiii.     Awarding penalties in the amount of $100 per day per claim for failure to provide required and requested documents;

xiv.     Awarding damages/restitution for "savings" taken from benefits that would have otherwise gone to Victory;

xv.     Awarding reasonable attorneys' fees, as provided by common law, federal or state statute, or equity, including Chapter 38.001 *et seq.* of the Texas Civil Practice and Remedies Code; § 502(g) of ERISA, 29 U.S.C. § 1132(g); and the Texas Insurance Code;

xvi.     Awarding costs of suit;

xvii.    Awarding pre-judgment and post-judgment interest as provided by common law, federal or state statute or rule, or equity; and

xviii.    Awarding all other relief to which Plaintiffs are entitled.

Respectfully submitted,

**Hawash Meade Gaston Neese & Cicack LLP**

*/s/ Andrew K. Meade*
Andrew K. Meade
Texas Bar No. 24032854
Walter J. Cicack
Texas Bar No. 04250535
2118 Smith Street
Houston, Texas 77002
(713) 658-9001 - phone
(713) 658-9011 - fax
ameade@hmgnc.com
wcicack@hmgnc.com

**Attorneys for Plaintiffs**