**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **NEIL GILMOUR, III, TRUSTEE FOR** | ) | |
| **THE GRANTOR TRUSTS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **V.** | ) | **CIVIL ACTION NO. SA-17-CA-518-FB** |
| | ) | |
| **BLUE CROSS AND BLUE SHIELD** | ) | |
| **OF ALABAMA, ET AL.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER TRANSFERRING VENUE TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, SHERMAN DIVISION

Before the Court are Certain Defendants' Partial Motion, and Memorandum in Support, to Dismiss Plaintiffs' Claims on Non-ERISA Plans for Lack of Personal Jurisdiction (docket no. 149), Certain Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint for Improper Venue (docket no. 152), Defendant Blue Cross Blue Shield of Michigan's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(3) (docket no. 157), Defendant Blue Cross and Blue Shield of Alabama's Motion and Memorandum in Support to Dismiss Plaintiffs' Claims or Transfer Venue (docket no. 158), Defendants CareFirst of Maryland, Inc.'s and Group Hospitalization and Medical Services' Rule 12 Motion to Dismiss (docket no. 159) and Defendant HealthNow New York Inc.'s Motion to Dismiss First Amended Complaint for Improper Service and Improper Venue (docket no. 182), along with responses and replies filed by the parties. After careful consideration, the Court is of the opinion that the motions should be granted in part and denied in part and this case should be transferred to the United States District Court for the Eastern District of Texas, Sherman Division.

<u>Motion to Dismiss Plaintiffs' Claims on Non-ERISA Plans</u>
<u>for Lack of Personal Jurisdiction</u>

Certain Blue Cross Blue Shield ("BCBS") defendants allege personal jurisdiction is lacking as to plaintiffs' claims which arise from non-ERISA plans.  (Docket no. 149).  Federal Rule of Civil Procedure 12(b)(2) allows a defendant to assert lack of personal jurisdiction as a defense to suit. "Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived." *Insurance. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982); *see also Leroy v. Great W. United Corp*., 443 U.S. 173, 180 (1979) (explaining that personal jurisdiction is "personal privilege[] of the defendant, rather than absolute stricture[] on the court, and [] may be waived by the parties").

"A party waives its personal jurisdiction defense by omitting it from a previously-filed motion to dismiss if the personal jurisdiction defense was available when the initial motion was made." *Orthoflex, Inc. v. ThermoTek, Inc*., No. 3:10-CV-2618-D, 2013 WL 2284878, at *1 (N.D. Tex. May 23, 2013) (citing FED. R. CIV. P. 12(g)(2), (h)(1). "[U]nder Rule 12(g)(2), a party that makes a motion to dismiss under Rule 12(b) prior to answering must consolidate all its Rule 12 defenses into one motion." *Hunter v. Serv-Tech, Inc*., No. CIV.A 07-9009, 2009 WL 2858089, at *2 (E.D. La. Aug. 28, 2009).  "If it omits any of the defenses delineated in Rule 12(b)(2)-(5) in a pre-answer motion to dismiss, that defense is waived." *Id.*

"The purpose of the Rule 12(h)(1) automatic waiver provision is to encourage the consolidation of motions and discourage the dilatory device of making them in a series." *Flory v. United States*, 79 F.3d 24, 25 (5th Cir. 1996) (per curiam).  "[T]he policy is one of promoting judicial efficiency by avoiding piecemeal, pre-answer litigation of 12(b)(2)-(5) defenses." *Hunter*, 2009 WL 2858089, at *2.

It is undisputed that none of these defendants previously challenged the Court's ability to exercise personal jurisdiction with respect to plaintiffs' non-ERISA claims in their previously filed motions to dismiss.  In asserting that waiver does not apply, defendants argue: (1) this defense was previously unavailable to them (docket no. 149 at 6 n.5), (2) waiver does not apply because this District Court mooted their prior motions to dismiss (docket no. 186 at 5-6), and (3) the Magistrate Judge expressly authorized them to raise otherwise waived defenses (docket no. 186 at 5-6).  For the reasons set forth below, the Court believes these arguments lack merit. .

1,  Availability of the Defense of Lack of Personal Jurisdiction

It is true that "Rule 12(h) does not provide for waiver if the omitted defense was unavailable when the party answered." *Orthoflex*, 2013 WL 2284878, at *1 (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1391, at 512 (3d ed. 2004)).  However, it is clear from Plaintiffs' Original Complaint that plaintiffs raised claims arising out of both ERISA and non-ERISA governed plans.[1]  Further, in schedules attached to the original complaint, plaintiffs specifically provided each policy number and claim number at issue in this suit so that defendants could determine the policy underlying each claim in dispute. *See* Schedules 1-4 to Orig. Compl. Defendants were therefore aware and specifically placed on notice of their ability to object to the lack of personal jurisdiction with respect to any claims arising from non-ERISA claims.

Although defendants now argue that the amended complaint allows them to "*better determine* . . . whether the claims at issue relate to non-ERISA plans for any Defendant," *see* (docket

---

[1] *See, e.g.*, Orig. Compl. ¶ 92 ("Under each Assignment Victory acquired the BCBS Subscriber's benefit rights under the BCBS Plans with respect to both ERISA and non-ERISA governed plans."); ¶ 153 ("To the extent that some of the BCBS Plans are not employee welfare benefit plans governed by ERISA, they are nonetheless valid and enforceable insurance contracts."); ¶ 160 ("As set forth more fully above, with respect to the BCBS Plans that are not employee welfare benefit plans governed by ERISA, they are nonetheless valid and enforceable insurance contracts. As such, the BCBS Plans contain an implied duty of good faith and fair dealing.").

no. 186 at 8) (emphasis added), this is not the test for unavailability. *Cf. Flock v. Scripto-Tokai Corp.*, No. CIV.A.H-00-3794, 2001 WL 34111630, at *3 (S.D. Tex. Jul. 23, 2001) ("A defendant could not waive a defense involving facts of which it was not, and could not have been expected to have been, aware."); *Gilmore v. Palestinian Interim Self-Gov't Auth.*, 843 F.3d 958, 964 (D.C. Cir. 2016), *cert. denied*, 138 S. Ct. 88 (2017) ("A defense is 'available' unless its legal basis did not exist at the time of the answer or pre-answer motion, or the complaint does not contain facts sufficient to indicate that a defense was possible.") (quotations omitted).  To hold otherwise would permit a defendant to revive any otherwise waived defenses any time that a plaintiff files an amended complaint with additional clarifying details. *See YETI Coolers, LLC v. Walmart Inc.*, No. A-17-CV-1145-RP, 2018 WL 5304119, at *2 (W.D. Tex. Oct. 25, 2018) ("The filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to the amendment of the pleading.") (brackets omitted).[2]  Accordingly, the Court declines to find that waiver does not apply to defendants because the defense of a lack of personal jurisdiction was unavailable to defendants when they filed their answer.

---

[2] *See also Rowley v. McMillan*, 502 F.2d 1326, 1333 (4th Cir. 1974) ("Rule 12(g) prevents the defense [of lack of personal jurisdiction] from being revitalized even though plaintiffs amended their complaint and provided Rowley with an opportunity to file a new motion under Rule 12, or an answer setting forth a defense which Rule 12 would permit to be presented by motion. . . . [A]n amendment to the pleadings permits the responding pleader to assert only such of those defenses which may be presented in a motion under Rule 12 as were not available at the time of his response to the initial pleading. An unasserted defense available at the time of response to an initial pleading may not be asserted when the initial pleading is amended."); *Brown v. Tethys Bioscience, Inc.*, No. CIV.A. 1:10-1245, 2012 WL 1111314, at *3 (S.D. W.Va. Mar. 30, 2012) ("Where a defendant files an answer and fails to raise the defense of lack of personal jurisdiction, '[t]he filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to the amendment of the pleading' absent new matter in the amended complaint.") (quoting 5C C. Wright, A. Miller, E. Cooper, & R. Freer, Federal Practice and Procedure § 1388 (3d ed.2008)); *Pruco Life Ins. Co. v. Wilmington Tr. Co.*, 616 F. Supp. 2d 210, 216 (D.R.I. 2009) ("while the amended complaints in both cases supercede the original complaints for all intents and purposes in the litigation, they do not revive Wilmington's personal jurisdiction defense.")

2.  The Mooting of Defendants' Motion to Dismiss

For these same reasons, this Court's mooting of defendants' rule 12 motions in light of the filing of the amended complaint did not revive any otherwise waived defense.  Defendants argue that where a motion to dismiss has been mooted by a court, waiver under Rule 12(g) is inapplicable, provided a party does not file successive motions under Rule 12 for the sole purpose of delay.

In support of their argument, defendants cite three cases in which courts considered Rule 12 defenses which were not included in the defendant's initial Rule 12 motion. *See* (docket no. 186 at 6) (citing *Kilopass Tech. Inc. v. Sidense Corp*., No. C 10-02066 SI, 2010 WL 5141843, at *3 (N.D. Cal. Dec. 13, 2010); *Burgess v. Vfinity LLC*, No. 2:17-CV-19-FTM-99MRM, 2017 WL 2311753, at *4, n.5 (M.D. Fla. May 26, 2017); *Stoffels ex rel., SBC Concession Plan v. SBC Commc'ns, Inc*., 430 F. Supp. 2d 642, 649 (W.D. Tex. 2006)).  However, none of these cases concern a successive motion brought pursuant to Rule 12(b)(2)-(5).  Rather, *Kilopass*, *Burgess*, and *Stoffels* all involve defenses under Rule 12(b)(1) or (b)(6)—defenses which are either not subject to waiver, *see Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434-35 (2011), or can at least be raised up to and at trial, *see* FED. R. CIV. P. 12(h)(2). Thus, when a court exercises its discretion to entertain a Rule 12(b)(1) or Rule 12(b)(6) motion subsequent to any prior Rule 12 motion or answer, it does not un-waive a previously waived defense.

Further, although defendants assert that the present belated Rule 12(b)(2) motion is not being filed for the purpose of delay, this is what would result if the Court were to entertain defendants' personal jurisdiction objection, which certain defendants bring over a year after plaintiffs filed suit. Accordingly, the Court declines to find that mooting defendants' rule 12 motions in light of the filing of the amended complaint revived any otherwise waived defense, including the ability to object to personal jurisdiction.

3.  The Magistrate Judge's Alleged Authorization of a Rule 12 Motion Raising an Otherwise Waived Defense

Defendants next argue the Magistrate Judge expressly permitted them to raise any non-jurisdictional non-merits-based Rule 12 issues, even with respect to defenses that have been previously waived.  Although the Magistrate Judge determined that "turning to venue and convenience (and any other non-jurisdictional, non-merits-based Rule 12) issues appears to be the most efficient way to proceed," with this case (docket no. 147 at 1), at no point did he either expressly or implicitly undo defendants' prior waiver of their ability to object to personal jurisdiction. Indeed, the Magistrate Judge's order demonstrated this by specifically instructing defendants to provide authority for any requested relief.  *See id.* at 2.

"The message conveyed by the present version of Rule 12(h)(1) seems quite clear." *Mississippi ex rel. Hood v. Entergy Miss., Inc.*, No. 3:08-CV-780-CWR-LRA, 2017 WL 2973998, at *1 (S.D. Miss. July 11, 2017) (quoting 5A Wright & Miller, Federal Practice and Procedure § 1391, at 515 (3d ed. 2004) (quotations and brackets omitted)).  "It advises a litigant to exercise great diligence in challenging personal jurisdiction, venue, or service of process." *Id.*  Additionally, "[t]he Fifth Circuit has taken a strict approach with the timing of Rule 12(b) motions." *Realtime Data LLC v. Carbonite, Inc.*, No. 6:17-CV-121 RWS-JDL, 2017 WL 4693970, at *2 (E.D. Tex. July 11, 2017), *report and recommendation adopted*, 2017 WL 3588048 (E.D. Tex. Aug. 21, 2017) (citing Albany Ins. *Co. v. Almacenadora Somex, S.A.*, 5 F.3d 907, 910 (5th Cir. 1993) (holding that defendants waived improper venue challenge on basis of forum selection clauses when defendants filed their second Rule 12(b) motion asserting that defense just nine days after their first Rule 12(b) motion)).  Having failed to timely and diligently object to the Court's personal jurisdiction with respect to plaintiffs' non-ERISA claims, the Court declines to allow defendants a second bite at the proverbial apple.

<u>Defendants' Motions to Dismiss or Transfer for Improper Venue</u>

This brings the Court to the issue of whether the majority of defendants waived their right to raise venue objections. *See* FED. R. CIV. P. 12(h)(1). As the Magistrate Judge noted in his report dated March 6, 2018, aside from Carefirst of Maryland, Inc. ("CFMI), Group Hospitalization and Medical Services, Inc. ("GHMSI") and BCBS of Arizona, none of the other BCBS defendants challenged the propriety of venue in this District. (Docket no. 136 at 11). Plaintiffs now contend that the remaining BCBS defendants waived any venue objection by failing to challenge venue in their initial Rule 12(b) motions.

"A defendant who did not expressly join his codefendant's motion to change venue clearly never waived his right to object to venue." *See* 14D WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 3829, at n.11 (4th ed. 2017) (collecting cases including *United States v. Stratton,* 649 F.2d 1066, 1078 (5th Cir. 1981)); *see also United States v. Stewart,* 256 F.3d 231, 238-39 (4th Cir. 2001) (explaining that defendant properly preserved its venue objection when it "stood neutral as to codefendants' motion to change venue"). This comports with the Magistrate Judge's observation that in a situation such as this–where plaintiffs bring suit against many defendants and only two or three of those defendants have responded with an initial venue challenge–a court may raise venue *sua sponte* as to the remaining defendants to ensure that the case proceeds in an efficient, rather than piecemeal manner. (Docket no. 136 at 11); *see also Bennett v. Gilchrist,* No. CV-15-S-365-NE, 2015 WL 13626348, at *1 (N.D. Ala. June 15, 2015) ("Although defendant waived the defense of improper venue when he omitted it from his motion to dismiss, FED. R. CIV. P. 12(h)(1), this court may *sua sponte* cure venue defects by transferring the case under the federal transfer statutes."). This also appears to be the most efficient approach in light of CFMI's and GHMSI's renewed venue objections, *see* (docket no. 159), and the venue objections raised by defendants HealthNow New York Inc. ("HealthNow"),

Lifetime Healthcare, Inc., and BCBS Wisconsin, which were only served with plaintiffs' First Amended Complaint, *see* (docket no. 183 n. 1), as well as a federal court's preference to transfer to the appropriate judicial districts rather than dismissing a case. *See Chenevert v. Springer*, Civ. A. No. C-09-35, 2009 WL 2215115 at *4 (S.D. Tex. Jul. 22, 2009).   That plaintiffs raise identical venue allegations against all defendants and have shifted their theory of venue throughout this litigation[3] further supports such a result, presuming there is a district court which is proper for all defendants. *See Wet Sounds, Inc. v. PowerBass USA, Inc.,* No. CV H-17-3258, 2018 WL 1811354, at *4 (S.D. Tex. April 17, 2018) (explaining that "the district court has wide discretion, and may transfer the entire case to another forum that would be proper for all the defendants" notwithstanding any Rule 12(h)(1) waiver by remaining defendants) (quoting 14D WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 3827 (4th ed. 2017)).

1.  Plaintiffs' Shifting Venue Arguments

ERISA's venue provision provides that "[w]here an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). In addition under general venue statute, a civil action may be brought in— "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3)  if there is no district in which an action may otherwise be brought as provided in this section, any judicial district

_____

[3]*Cf. Inclusive Communities Project, Inc. v. United States Dep't of Treasury*, No. 3:14-CV-3013-D, 2016 WL 6397643, at *8 (N.D. Tex. Oct. 28, 2016) ("Although ICP has amended its complaint, it has not changed any of the allegations related to its § 3608(d) claim").  And, as  plaintiffs even admit, they are now seeking to establish the propriety of venue through means not pleaded.  *See* Docket no. 178 at 24.

in which any defendant is subject to the court's personal jurisdiction with respect to such action." Because the ERISA venue provision is not exclusive, plaintiffs "may demonstrate proper venue under ERISA's venue provision, 29 U.S.C. § 1132(e)(2), or under the federal venue statute, 28 U.S.C. § 1391(b)." *Macdonald v. Associates for Restorative Dentistry Ltd. Pension Plan*, No. 2:16-CV-168-TLS, 2016 WL 4506872, at *2 (N.D. Ind. Aug. 29, 2016); *see also* 14D CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 3825 (4th ed. 2018) ("The ERISA venue provision is not exclusive. Thus, the plaintiff may use it or may employ the venue options provided by the general venue statute, Section 1391(b).")

In their original complaint, plaintiffs invoked only the general venue statute, 28 U.S.C. § 1391, and alleged venue is proper in this district because "a substantial part of the events or omissions giving rise to the claims occurred in this district." Compl. ¶ 3. In response to CFMI and GHMSI's first motions to dismiss, plaintiffs abandoned this position, arguing instead that venue was proper because the BCBS defendants "may be found" in this judicial district by virtue of their agency relationship with BCBS Texas. *See* Docket no. 136 at 6.  However, as explained in the Magistrate Judge's March 2018 Report and Recommendation, a defendant "may be found" for purposes of § 1132(e)(2) in a judicial district where it has minimum contacts and, although plaintiffs properly alleged that the BCBS defendants, by virtue of that agency relationship had minimum contacts with the state of Texas, plaintiffs failed to allege any facts suggesting that the BCBS defendants, even by virtue of that agency relationship, had minimum contacts with this judicial district. *See* Docket no. 136 at 7-9.

Now, having been granted leave to replead to provide additional allegations and venue facts pertinent to whether venue is proper in this District, plaintiffs have again changed their venue theory, alleging in their First Amended Complaint that venue is proper under § 1132(e)(2) because the BCBS defendants allegedly breached plans in this district by failing to pay or by underpaying claims related

to certain patients who were treated at hospitals located in the Western District of Texas.[4]  Plaintiffs also assert in a conclusory fashion that venue is proper because "a substantial number of the BCBS Subscribers at issue in this action reside in this district and thus were to have received relevant benefits in this district." Amend Compl. ¶ 3.

These allegations are insufficient to properly lay venue in this District. Although the Fifth Circuit has not addressed where a "breach took place" for purposes of ERISA venue, the majority of district courts in this Circuit appear to hold that a breach takes place where performance was to be rendered to the participant under the plan. *See French v. Dade Behring Life Ins. Plan*, No. CIV.A.09-394-C-M2, 2010 WL 2360457, at *2 (M.D. La. Mar. 23, 2010), *report and recommendation adopted sub nom*., 2010 WL 2360444 (M.D. La. Jun. 8, 2010) (citing *Memorial Hermann Hosp. Sys. v. Boyd Gaming Corp. Percs Plan*, No. H-06-3570, 2007 WL 624334, *2 (S.D. Tex. Feb. 22, 2007)). "Those courts interpret 'performance' to mean where the payee was to receive payment of benefits under the plan*." Id*. This is true even in instances where the plan beneficiary assigns his rights to benefits to the healthcare provider, such as is the case here. *See Brown Sch., Inc. v. Florida Power Corp*., 806 F. Supp. 146, 151 (W.D. Tex. 1992). Other district courts have held that a claim for nonpayment of benefits allegedly due under an ERISA plan arises where the plan makes the challenged decision (i.e., the decision to deny payment of a claim)." *French*, 2010 WL 2360457, at *2.

Plaintiffs have failed under either approach to sufficiently allege that venue is proper in the Western District of Texas because here is where the breach took place.  First, the mere fact that several patients received treatment in the Western District of Texas does not necessarily mean that they resided

---

[4] *See, e.g*., Amend Compl. ¶ 15 (BCBS-AL breached plans in this district, including for example only and without limitation, by substantially underpaying benefits related to patient R.R., who was treated as an inpatient in this district at Victory Landmark in October 2014 under subscriber number KYI*********1.")

here. *See, e.g., IHC Health Services, Inc. v. Eskaton Properties, Inc.*, No. 2:16-CV-3-DN, 2016 WL 4769342, at *4 (D. Utah Sept. 13, 2016) (explaining that "[t]he breach of an ERISA plan occurs at the place the policy holder resides and would have received benefits" and that this is true, even if the services may have been provided at an out-of-state location."). Nor do plaintiffs' conclusory allegations that "a substantial number of the BCBS Subscribers at issue in this action reside in this district and thus were to have received relevant benefits in this district," Amend Compl. ¶ 3, resolve the issue. *See Breathwit Marine Contractors, Ltd. v. Deloach Marine Servs., LLC*, 994 F. Supp. 2d 845, 848 (S.D. Tex. 2014) ("[T]he court is not obligated to credit conclusory [venue] allegations, even if uncontroverted."). Indeed, plaintiffs even argue in response to the motions to dismiss that patient residence information is "simply unnecessary to resolve any question of venue or personal jurisdiction in this case" in light of their other arguments in support of venue. *See* Docket no. 178 at 21 n. 32.

Second, according to plaintiffs, the plan decisions at issue in this case were made by Blue Cross Blue Shield of Texas ("BCBSTX),[5] which plaintiffs conceded in earlier filings is located in Richardson Texas.   Apparently acknowledging these flaws, plaintiffs now argue, in response to the motions to dismiss, that venue is proper here because: (1) defendants "reside" in this District since ERISA permits nationwide personal jurisdiction and § 1391(c) ties a corporate entity's residence to any judicial district in which it is subject to personal jurisdiction, *see* Docket No. 178 at 12-15; (2) BCBSTX's actions in Texas as the BCBS defendants' agent renders venue proper in this judicial district, *id.* 16-22; and (3) venue is alternatively proper § 1391(c)—the fallback provision of the general venue statute, *id.* 23-25.

---

[5] *See* Amend Compl. ¶ 3("[A]ll or substantially all of the wrongful decisions denying benefits payments were made by BCBSTX in Texas.")

A.  ERISA'S Venue Statute and § 1391(c)'s Definition of Corporate Residence

28 U.S.C. § 1391(c)(2) provides: "For all venue purposes . . . an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." (amended in Dec 2011).  Reading this definition of "resides" in the general venue statute into the ERISA venue statute, some courts have determined that a plaintiff may properly venue an ERISA action against a corporate defendant in any judicial district in the country, regardless of the defendant's lack of contact with the district. *See, e.g.*, *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1210 n. 3 (10th Cir. 2000) ("In determining the definition of resides in the venue context, we supplement the specific venue statute in § 1132(e)(2) with the more general venue provision applicable in all civil cases found in 28 U.S.C. § 1391(c) . . . Although this reading seems to negate the rest of the venue provisions for corporations, it still has meaning when a plaintiff sues an individual or a partnership."); *McCracken v. Auto. Club of S. Cal., Inc.*, 891 F. Supp. 559, 562-63 (D. Kan. 1995) (finding that although the corporate defendants "ha[d] no apparent contacts or ties to th[e] judicial district," ERISA's national service of process conferred personal jurisdiction over them, making venue also proper); *Stumpf v. Med. Benefits Admin'rs*, No. 8: 99CV185, 2001 WL 1397326, at *2 (D. Neb. Mar. 13, 2001) (borrowing the definition of reside from § 1391(c) because the ERISA venue statute does not define corporate residence). Plaintiffs urge the Court to follow this same approach, notwithstanding the prior observation that basing a minimum-contacts analysis for venue purposes on ERISA's national service-of-process provision would be improper. *See* Docket no. 136 at 7 n. 3 (citing *Waeltz v. Delta Pilots Ret. Plan*, 301 F.3d 804, 808-09 (7th Cir. 2002) (rejecting plaintiff's argument that because ERISA provides for nationwide personal jurisdiction, it also permits nationwide venue)).

-12-

The fact that some courts have adopted a literalist construction of the two venue statutes merits discussion.  In reaching such a holding, at least one court has explained that such a reading "not only seems circular but it effectively nullifies ERISA's venue provisions with respect to corporate defendants. *McCracken*, 891 F. Supp. at 562. And, "[t]ypically, such an anomalous result would signal some error in interpretation or application." *Id.* Rather than attempting to reconcile this "anomalous result from reoccurring in the same or similar circumstances," the *McCracken* court simply "le[ft] it to Congress to develop a new definition for corporate residence or to take other action." *Id.* at 563 n. 4.

Accordingly, some "[c]ommentators and courts have criticized the notion that a plaintiff may properly venue an ERISA action in any district in the country." *Stickland v. Trion Group, Inc.*, 463 F. Supp. 2d 921, 926 (E.D. Wis. 2006) (citing Rachel M. Janutis, Pulling Venue Up by its Own Bootstraps: The Relationship Among Nationwide Service of Process, Personal Jurisdiction and § 1391(c), 78 St. John's L. Rev. 37 (2004)); *see also* 14D Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3825 (4th ed. 2018) ("In ERISA cases, a special provision permits nationwide service of process, based merely upon a defendant's minimum contacts with the United States as a whole.  Because process may thus be served in any district, it is arguable that personal jurisdiction also may be established wherever service is effected. Courts conclude, however, that Section 1132(e)(2) may not be used to support venue in this bootstrap fashion. Such an interpretation would subsume the other venue choices under the statute. Instead, as noted, the proper focus is the minimum contacts analysis.").

Those courts and commentators have noted that "[t]he legislative history of § 1391(c) and the historical context in which Congress enacted it supports an *International Shoe* minimum contacts reading of the phrase 'subject to personal jurisdiction.'" *Stickland v. Trion Group, Inc.*, 463 F. Supp.

2d 921, 926. "Further, a conclusion that a corporate defendant "resides" in any judicial district in which it is subject to personal jurisdiction, irrespective of a minimum contacts analysis, would 'render superfluous' § 1132(e)'s provision that venue also is proper where a plan is administered, where a breach takes place, or where a defendant 'may be found.'" *Id.* (citing *Waeltz v. Delta Pilots Retirement Plan*, 301 F.3d 804, 808 (7th Cir. 2002)); *see also Laurent v. Pricewaterhousecoopers LLP*, No. 04-809-GPM, 2005 WL 1221304, at *2 (S.D. Ill. May 20, 2005) (finding that language of *Waeltz* applied with "equal force" to plaintiff's promulgation of nationwide definition of "resides"); Wright & Miller § 3825 *supra*. It would also "undermine the justification for venue, i.e. to protect a defendant from having to litigate in an overly inconvenient or burdensome forum," *Strickland*, 463 F. Supp. 2d at 926, and would It force a court to "expend limited judicial resources to resolve a dispute with which it has little connection," which diverts resources from cases involving forum residents or arising out of events that took place in the district. Jantus, 78 St. John's L. Rev. at 39-40, 72.  Such a holding comports with the Sixth Circuit's conclusion that, as with the term "may be found," a defendant "resides" for ERISA venue purposes "in any district in which its 'minimum contacts' would support the exercise of personal jurisdiction."  *Moore v. Rohm & Haas Co*., 446 F.3d 643, 646 (6th Cir. 2006) (J. Griffin opinion but J. Sutton joined) (citing *Waeltz,* 301 F.3d at 809-10); *Varsic v. United States District Court*, 607 F.2d 245, 248-49 (9th Cir. 1979)); *see also Bd. of Trustees of Health & Welfare Dept. of Const. & Gen. Laborers' Dist. Counsel of Chicago & Vicinity v. Kruzan*, No. 11CV03233, 2011 WL 6140530, at *2 (N.D. Ill. Dec. 8, 2011).

Additionally, while the Fifth Circuit has yet to directly address this issue, such a holding is also in keeping with the Fifth Circuit's "grave misgivings" in *Bellaire* that national service of process provisions such as the one present in § 1332(e)(2), confers nationwide personal jurisdiction, irrespective of the traditional personal jurisdiction analysis, set forth in *International Shoe, i.e.,* whether the

defendant has had minimum contacts with the forum and whether maintenance of the action in the forum will offend traditional notions of fair play and substantial justice. *See Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Michigan*, 97 F.3d 822, 826 (5th Cir. 1996).

The fact that in 2011 Congress changed the introductory phrase of § 1391(c) from "[f]or purposes of venue under this chapter," 28 U.S.C.A. § 1391 (effective 2002), to "[f]or all venue purposes," 28 U.S.C.A. § 1391 (effective 2011), does not appear change this analysis. Nor does plaintiffs' contention that such a reading would not make § 1332(e)(2) "<u>inherently</u> superfluous," change the analysis because, as plaintiffs even concede, "as a practical matter, the vast majority of ERISA cases only involve entity defendants." Docket no. 178 at 14 n. 16 (emphasis in original).

In enacting ERISA's specific venue statute, the Court recognizes that Congress "clearly struck the balance in favor of liberal venue," *Varsic v. United States Dist. Court,* 607 F.2d 245, 248 (9th Cir. 1979). However, because nothing in § 1132(e) supports plaintiffs' argument that nationwide venue is permissible, such a conclusion appears to improperly conflate personal jurisdiction with venue. *See Verizon Employee Benefits Comm. v. Jaeger,* CIV.A.3:05CV1860L, 2006 WL 2880451, at *4 (N.D. Tex. Sept. 28, 2006) ("Whether Plaintiff's choice of venue is proper is a separate inquiry to the issue of whether process may be served anywhere the defendant 'resides or may be found.'").  For all these reasons, the Court is persuaded that until the Fifth Circuit holds otherwise, a corporate defendant "resides" for purposes of § 1132(e)(2) only in a judicial district where the defendant maintains sufficient minimum contacts.

B.  BCBS as an Agent

Plaintiffs next argue that venue is proper in the Western District of Texas because "[e]very claim asserted in this case (both state and federal, and regardless of whether the associated health plan is an ERISA plan or not) implicates the actions of BCBS-TX as the associated defendant's agent with

respect to legally-operative events giving rise to the underlying claims." Docket no. 178 at 16. Specifically, plaintiffs assert that "[t]he Blue Cross Entities regularly used Blue Cross Blue Shield of Texas as an agent/representative while dealing with Victory. This included, without limitation, much of the verification of coverage and benefits, pre-certifications, administration of claims and appeals, and benefit/payment determinations described herein." Amend. Compl. ¶ 145, 192.  In other words, plaintiffs do not argue that any or all of the BCBS defendants reside or may be found in the Western District of Texas. Rather, plaintiffs argue that the BCBS defendants by virtue of their alleged agency relationship with BCBSTX satisfy this part of ERISA's special venue provision.

As the Magistrate Judge previously explained, "[t]he actions of an agent may establish minimum contacts over a principal." Docket no. 136 at 8 (quoting *McFadin v. Gerber*, 587 F.3d 753, 761 (5th Cir. 2009)).  Accordingly, because the Report and Recommendation was accepted, this Court has already held that plaintiffs' allegations of an agency relationship (either premised on actual or apparent authority), which in this procedural posture are taken as true, suffice to show minimum contacts between the BCBS defendants (via their alleged agent) and the state of Texas.  *See id.* (citing *Broadway Nat'l Bank v. Plano Encryption Techs., LLC*, 173 F. Supp. 3d 469, 473 (W.D. Tex. 2016)). Thus, although defendants deny any agency relationship with BCBS-TX, arguing that this agency theory is "factually incorrect," they have failed to submit any uncontroverted evidence,[6] calling such allegations into question. *See McCaskey v. Continental Airlines, Inc.*, 133 F. Supp. 2d 514, 523 (S.D. Tex. 2001) ("[I]n the absence of an evidentiary hearing, a court should allow a plaintiff to carry this burden based upon setting forth facts that taken as true would establish venue.").

---

[6] While BCBS Michigan submitted an affidavit explaining that it "does not have a registered agent for service of process in Texas" and that "BCBSM is not a corporate affiliate of Blue Cross Blue Shield Texas" *see* docket no. 157-3 ¶¶ 4-5, such allegations do not address whether BCBSTX had the actual or apparent authority to act as BCBS Michigan's agent with respect to the claims at issue in this litigation.

Nor do *Choice Healthcare Inc. v. Kaiser Foundation Health Plan of Colorado*, 615 F.3d 364 (5th Cir. 2010), or *St. Luke's Episcopal Hosp. v. La. Health Serv. & Indemnity Co.,* No. H-08-1870, 2009 WL 47125 (S.D. Tex. Jan. 6, 2009), control the issue presented here, at least in so far as the BCBS defendants argue these cases illustrate that they lack minimum contacts with the state of Texas. In *St. Lukes*, the Court questioned whether the Blue Cross Blue Shield of Louisiana's mere participation in the BlueCard Program, which enabled it to obtain in-state processing and discounts in states with affiliate members, amounted to purposeful availment in of the benefits of doing business in Texas. *Id.* at *8. The Court also rejected plaintiff's argument that specific jurisdiction existed over the out-of-state insurer because the insurer authorized the health care provider to treat its insured over the phone and partially paid its bill. 2009 WL 47125 at *5-6. In *Kaiser*, the Fifth Circuit agreed with the district court's analysis in *St. Luke's*. The Court found that the out-of-state insurer's pre-treatment approval of medical care for its insureds and payment of a limited number of claims in Louisiana did not demonstrate that the insurer purposefully directed commercial conduct towards Louisiana because the individual insureds unilaterally sought treatment in Louisiana. 615 F.3d at 369-371. Finally, the *Kaiser* court held that the out-of-state insurer's agreement to participate in a Multiplan PPO, which in turn contracted with the plaintiff provider, enabling the defendant to receive discounted rates for serves rendered in Louisiana, did not amount to purposeful availment with the forum. *Id.*

Plaintiffs here do not plead or argue that the BCBS defendants' mere participation in the Blue Card program creates sufficient minimum contacts with the state of Texas. Nor do plaintiffs allege that minimum contacts exist with the state of Texas merely because the BCBS defendants were pre-approved treatment in Texas or directed partial payments to Texas. Instead, plaintiffs allege that Texas-based BCBSTX—acting on behalf of all the BCBS defendants—made material misrepresentations regarding coverage and wrongfully denied benefits. Accordingly, it is BCBSTX's communications and

denial of benefits allegedly made with actual or apparent authority from the BCBS defendants that forms the basis of this litigation. *See* Amend Compl. ¶¶ 145, 192.[7] While the BCBS defendants appear to argue that BCBSTX performed a mere ministerial function in the pre-approval of treatment and administration of the claims at issue in this dispute, at this stage in the proceedings and lacking any controverting evidence presented by the BCBS defendants, the Court will accept plaintiffs' allegations as true. *See McCaskey*, 133 F. Supp. 2d at 523 (S.D. Tex. 2001).

However, as with plaintiffs' Original Complaint, there still remains an outstanding venue issue. Plaintiffs allege that venue is proper in the Western District of Texas because of BCBSTX's continuous and systematic business contacts with the Western District of Texas and also "because BCBSTX's wrongful actions in this matter (including the wrongful misrepresentations and benefits determinations alleged herein) took place in the Western District of Texas and/or caused injury in the Western District of Texas by, among other things, resulting in the denial of benefits that were to be received in this district." Amend Compl. ¶ 45. These conclusory allegations lack factual support and, in fact, are belied by other allegations made by plaintiffs and thus, are insufficient to establish the requisite minimum contacts in this judicial district. *See Real Estate Training Intern., LLC v. Nick Vertucci Companies, Inc.*, No. SA-14-CV-0099-XR, 2014 WL 1383897, at *2 (W.D. Tex. Apr. 8, 2014) (finding that

---

[7] *See also* docket no. 178 at 19 (arguing that BCBS-TX's actions (which, importantly, established contacts not merely **_with_** but **_in_** Texas) include the following: (a) BCBS-TX's in-state misrepresentations to plaintiffs regarding benefits (approximately 40% of the underlying patient claims); and (b) BCBS-TX's in-state wrongful determinations of claims (100% of those underlying claims, including claims where BCBS-TX also certified coverage in advance") (citing Amend Compl. ¶¶ 3, 120, 145, 192, emphasis in original) and 21 (distinguishing the cases cited by defendants from the present case because plaintiff's claims in each of those cases "did not arise from any actions of the in-state agent. Rather, the in-state agents were mere claim processors . . . or they otherwise weren't responsible for any substantive determinations"); Docket no. 190 at 13 ("[D]efendants mischaracterize plaintiffs' arguments as based on defendants' mere membership in a national program that allowed insureds to obtain claims processing or coverage verifications in multiple states. But, that is not the basis for plaintiffs' arguments. Plaintiffs contend that defendants authorized (or, at a minimum, apparently authorized) BCBS-TX to make actual benefits determinations and, in the process, breached tort duties and contract obligations by wrongfully underpaying benefits; together, these allegations establish both agency and a substantive basis to impute an in-state agent's forum contacts to its out-of-state principals.") (citations omitted).

plaintiff had failed to meet his burden of demonstrating propriety of venue where plaintiff asserted in conclusory fashion that venue is proper under 28 U.S.C. § 1391(b)(2) but Amended Complaint lacked factual support indicating that "substantial part of the events or omissions giving rise to the claim" occurred within this district.); *Charles v. SBC Disability Income Plan*, No. 6:05-CV-006-C, 2005 WL 8159403, at *2 (N.D. Tex. Sept. 19, 2005) ("once a defendant challenges venue, conclusory allegations, speculation, and unsubstantiated assertions cannot be used to establish proper venue because the plaintiff has the burden of proving venue").

First, plaintiffs BCBSTX's alleged continuous and systematic business contacts with the Western District appear to be unrelated to the BCBS defendants and as such there appears to be no basis to impute these contacts to the BCBS defendants. *See, e.g.*, *In re Chinese-Manufactured Drywall Products Liab. Litig.,* 753 F.3d 521, 531 (5th Cir. 2014) (suggesting that invocation of agency theory is more appropriate in context of specific jurisdiction as opposed to general jurisdiction); *Mullen v. Bell Helicopter Textron, Inc*., 136 F. Supp. 3d 740, 743 (S.D. Miss. 2015) (discussing difficulty in establishing general jurisdiction in forum other than place of incorporation or principal place of business and explaining that "the acts of a subsidiary or agent within the forum state do not impute such general jurisdiction to the parent"). In other words, BCBSTX's alleged systematic and continuous contacts with this judicial district is too attenuated to render any of the BCBS defendants "at home" in the Western District of Texas. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (U.S. 2011) ("A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State"); *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo*., 615 F.3d 364, 368 (5th Cir. 2010) ("To find

-19-

general jurisdiction over the defendant, a defendant's contacts with the forum must be substantial; random, fortuitous, or attenuated contacts are not sufficient.").

The only facts pleaded to support plaintiffs' allegation that minimum contacts exist with the Western District of Texas are plaintiffs' allegations that (1) BCBSTX made misrepresentations to some Victory hospitals located in San Antonio in response to telephone calls initiated by the Victory hospitals; (2) BCBSTX mailed partial payments to some of plaintiffs' San Antonio locations; and (3) plaintiffs submitted claims to the various BCBS defendants by and through BCBSTX.  However, as the Court in *St. Luke's* explained, specific jurisdiction does not exist over an insurer merely because the insurer authorized the healthcare provider located in the forum state to treat its insured over the phone and partially paid its bill. 2009 WL 47125 at *5-6. Additionally, such a finding is consistent with Fifth Circuit precedent. *See Freudensprung v. Offshore Tech. Services, Inc.*, 379 F.3d 327, 344 (5th Cir. 2004) ("[T]his Court has repeatedly held that the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant.").

Thus, although plaintiffs have alleged sufficient facts to suggest that the BCBS defendants, by virtue of their alleged agency relationship with BCBSTX, have minimum contacts with the state of Texas, plaintiffs have failed to establish that venue is proper in the Western District of Texas because the BCBS defendants either reside or may be found in this Judicial District.[8]  Nor do plaintiffs allege

---

[8] By their own pleadings, plaintiffs appear to recognize the difficulty in tying venue to this judicial district as opposed to some other district court located in the state of Texas. *See, e.g.*, Amend. Compl. ¶3 ("All of the disputed services forming the basis of Victory's causes of action were rendered in Texas, and all the claims for benefits were made to Defendants' agent in Texas, Blue Cross Blue Shield of Texas ("BCBSTX"). As a result, all or substantially all of the wrongful decisions denying benefits payments were made by BCBSTX in Texas.").

or argue that venue is proper here because the plans were administered in this judicial district.  For all these reasons, plaintiffs have failed to meet their burden of proving that venue is proper in the Western District of Texas under any of the provisions set forth in §1132(e).[9]

## C.  Fallback Provision

Plaintiffs nevertheless argue that venue is proper under § 1391(b)(3)'s "fallback provision," which provides "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."  However, this fallback provision by its terms only applies where "there is no district in which an action may otherwise be brought." 28 U.S.C. § 1391(b)(3); *see also Thompson v. Elec. Transaction Corp*., No. CIV.A. 1:98CV305-P-B, 2000 WL 33907674, at *3 n. 6 (N.D. Miss. Mar. 30, 2000).

Here, according to plaintiffs' own pleadings, venue is proper in another judicial district—where BCBSTX allegedly made the misrepresentations and plan decisions that form the basis of this entire suit. *See* 28 U.S.C. § 1391(b)(2) (explaining that "[a] civil action may be brought in—a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.").[10]

---

[9] The parties dispute whether for purposes of § 1132(e) venue must be established on a claim-by-claim and defendant-by-defendant basis. Some courts have concluded that only a single defendant need reside or be found in a certain judicial district to establish the propriety of venue under ERISA's "broad venue provisions." *See, e.g.*, *Burgess v. HP, Inc*., No. 16-CV-04784-LHK, 2017 WL 467845, at *5 (N.D. Cal. Feb. 3, 2017). Plaintiffs, however, have failed to demonstrate that *any* defendant resides or may be found in this judicial district. Moreover, the Court declines to construe certain defendants' alleged waiver of their venue arguments as plaintiffs affirmatively establishing that any defendant resides or may be found in this district.

[10] Certain Defendants also concede that "[i]f the Court accepts that BCBSTX's conduct is the critical issue for establishing venue, then the district where BCBSTX engaged in this conduct would support venue—not the Western District." Docket no. 183 at 8.

Accordingly, plaintiffs' reliance on §1391(b)(3) appears to be misplaced.[11] *See Rhymes v. Ethicon*, Inc., No. 2:12-CV-00669, 2013 WL 12155244, at *2 (E.D. Tex. May 9, 2013) (plaintiff improperly relied on § 1391(b)(3) to establish venue in Eastern District of Texas where substantial part of events giving rise to claim occurred in Northern District of Texas).

For all these reasons, plaintiffs have failed to meet their burden of setting forth sufficient facts which taken as true would establish that venue properly lies in the Western District of Texas. *See Broadway Nat'l Bank, LLC*, 173 F. Supp. 3d at 473 & n.2 (finding that, once challenged, burden of sustaining venue lies with plaintiff and discussing split of authority on issue within Fifth Circuit); *see also Zurich Am. Ins. Co. v. Tejas Concrete & Materials Inc*., 982 F. Supp. 2d 714, 719 (W.D. Tex. 2013) ("Once a defendant challenges venue, the plaintiff has the burden of demonstrating that the chosen venue is proper."); 14D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3826 (4th ed.) ("The weight of judicial authority appears to be that when the defendant has made a proper objection, the burden is on the plaintiff to establish that the chosen district is a proper venue. This may be considered the better view because it is consistent with the plaintiff's threshold obligation to show that the case belongs in the particular district court in which suit has been instituted.").

Nor should plaintiffs be permitted, as requested,[12] a third bite at the apple to amend their complaint to properly assert venue. The Magistrate Judge previously granted plaintiffs leave to replead to address the venue issues addressed in the prior Report and Recommendation and this case has

---

[11] Plaintiffs appear to recognize this fact. *See* Docket no. 190 at 16 ("Defendants are also correct that, if the Northern District is a proper venue given BCBS-TX's status as defendants' agent, then the fallback provision would be inapplicable because, among other reason, venue would be proper under § 1391(b)(2) because a substantial part of the acts/omissions giving rise to each claim occurred in that district.").

[12] *See* (docket no. 178 at 21 n. 32 & 25).

already been pending for close to two years.  Further, allowing a third amendment would result in a

third round of briefing on the limited issue of venue, which would result in undue prejudice to the

BCBS defendants.  Accordingly, this Court exercise its discretion and denies plaintiffs leave to amend.

*See Foman v. Davis*, 371 U.S. 178, 182 (1962) (explaining that although leave to amend should be

"freely given" leave may be denied when there is "repeated failure to cure deficiencies by amendments

previously allowed, undue prejudice to the opposing party by virtue of the amendment" or "where

amendment would result in undue delay and grant or denial of an opportunity is within the discretion

of the district court provided that refusal is accompanied by a justifying reason").

<u>Transfer is the Appropriate Next Step Under</u>
<u>Either 28 U.S.C. § 1406(a) or 28 U.S.C. § 1404(a)</u>

"If venue is improper, 28 U.S.C. § 1406(a) instructs district courts to 'dismiss, or if it be in the

interest of justice, transfer such case to any district or division in which it could have been brought.'"

*Zurich Am. Ins. Co. v. Tejas Concrete & Materials Inc*., 982 F. Supp. 2d 714, 720 (W.D. Tex. 2013)

(quoting 28 U.S.C. § 1406(a)). While "[t]he decision to dismiss or transfer lies within the court's

discretion," *id.*, "[g]enerally, the 'interest of justice' instructs courts to transfer cases to the appropriate

judicial district, rather than dismiss them," *see Chenevert v. Springer*, Civ. A. No. C-09-35, 2009 WL

2215115 at *4 (S.D. Tex. Jul. 22, 2009) (quotations omitted).

As discussed above, venue is proper for this entire action in the judicial district where BCBSTX

allegedly made the misrepresentations and plan decisions that form the basis of this entire suit.  *See* 28

U.S.C. 1391(b)(2).  Pursuant to plaintiffs' prior judicial admission, BCBSTX is located in Richardson,

Texas, which is located partially in Northern District of Texas and otherwise in the Eastern District of

Texas, depending on whether BCBSTX is located in either Dallas or Collin County.  It appears from

independent research that BCBSTX is located in Collin County and therefore venue is  proper under

28 U.S.C. § 1406(a) in the Sherman Division of the Eastern District of Texas.  *See* UNITED STATES COURTS, https://www.uscourts.gov/court-locator/zip/75082/court/district (Last visited March 6, 2019).

There exists one additional basis to support the above-referenced transfer.  Under § 1404(a), even where venue is proper in a judicial district, a court may, "[f]or the convenience of the parties and witnesses and in the interest of justice," "transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  Although none of the BCBS defendants have expressly invoked § 1404(a), transfers pursuant to § 1404(a) may be made *sua sponte*.  *Mills v. Beech Aircraft Corp*., Inc., 886 F.2d 758, 761 (5th Cir. 1989).

As discussed above, this action could have been brought in the judicial district where BCBSTX is located. *See In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir.2004) (explaining that in applying the provisions of § 1404(a), the first determination is whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed).  Further, the balance of private and public interest factors weigh in favor of transfer, notwithstanding plaintiffs' forum choice. *In re Volkswagen*, 371 F.3d at 203. With regard to the private interest factors, all the allegedly wrongful acts or omissions occurred where BCBSTX is located. Although two of the six Victory entity plaintiffs operated in the Western District of Texas (Victory Landmark and Victory Southcross), these entities have since gone bankrupt. Accordingly, there is no reason to believe that any of the evidence or witnesses are located in San Antonio. Indeed, the trustee for the Victory entities obtained his authorities to bring suit on behalf of the Victory facilities through a bankruptcy proceeding in the Northern District of Texas. *See* Amend. Compl. ¶¶ 4- 10.  Further, this entire action also appears to have little connection to the Western District of Texas. Plaintiffs do not argue that any of the plans were administered in this judicial district and, of the 1,896 claims for which plaintiffs bring suit, only 372 arose from hospitals located in the Western District of Texas. *See* Sched 1B attached to Pl. Amend Compl.  "[T]he interest

of justice is better served when a suit is litigated in the forum that more clearly encompasses the locus of operative facts and consequently have considered the desirability of resolving controversies in their locale during § 1404(a) analysis." *Milwaukee Elec. Tool Corp. v. Robert Bosch Tool Corp.*, No. CIV A 404CV0001-P-B, 2005 WL 5250029, at *4 (N.D. Miss. Feb. 23, 2005) (quotations omitted).

Accordingly, even if venue is proper in this judicial district, the Court concludes that this case should be transferred for the convenience of parties and witnesses and in the interest of justice.  The Court will therefore exercise its sound discretion to transfer the case to the judicial district where BCBSTX is located pursuant to § 1404(a).  *See Mills*, 886 F.2d at 761 ("Decisions to effect 1404 transfers are committed to the sound discretion of the transferring judge, and review of a transfer is limited to abuse of that discretion.") (quotations omitted); *see also Johnson v. United Airlines, Inc.,* No. 12 C 5842, 2013 WL 323404, at *8 (N.D. Ill. Jan. 25, 2013 ("If United waived its ability to seek transfer under § 1406(a), the court still would transfer the case to the Eastern District of Virginia under § 1404(a).  And if United did not waive its ability to seek transfer under § 1406(a), the court would transfer the case regardless of whether venue were proper in this District, and thus regardless of whether § 1404(a) or § 1406(a) applied."); *Bennett,* 2015 WL 13626348, at *1 ("Although defendant waived the defense of improper venue when he omitted it from his motion to dismiss, *see* FED. R. CIV. P. 12(h)(1), this court may *sua sponte* cure venue defects by transferring the cause under the federal transfer statutes.").

For these reasons, the BCBS defendants' various motions to dismiss for lack of venue will be granted in part and denied in part.  This case will be transferred to the Eastern District of Texas,[13]

---

[13] In light of this decision, there is no need to address defendant BCBS-Alabama's assertion that plaintiffs' claims against BCBS-Alabama should be transferred to the Northern District of Texas under the pendent venue doctrine because the "primary" or 'elder" case *of Innova Hospital San Antonio, LP, et al. v. Health care Service Corp* is currently pending in the Northern District of Texas. *See* docket no. 158 at 14-20.

<u>Defendant HealthNow New York's Motion to Dismiss</u>
<u>For Failure to Timely Serve</u>

Finally, the Court turns to Defendant Healthnow New York's motion to dismiss for failing to effect service (docket no. 182) within the 120–day period provided by Fed. R. Civ. P. 4(m). According to HealthNow, plaintiffs never filed it with the Original Complaint and only served it with the Amended Complaint over fourteen months after commencing this lawsuit.  Healthnow states that, given this "excessive" delay in service, plaintiffs have failed to meet their burden of proving good cause for their failure to serve.

"[A] district court enjoys discretion under Rule 4(m) to extend the time for service even when a plaintiff fails to show good cause." *U.S. ex rel. Bowman v. Computer Learning Centers*, 73 Fed. App'x 735, 736 (5th Cir. 2003).  Here, it is undisputed that plaintiffs eventually served Healthnow, and Healthnow has failed to prove or even argue that plaintiffs' delay in service prejudiced it in any manner. Indeed, an argument can be made that Healthnow has benefitted from the Court's prior guidance as a result of plaintiffs' delay in service.  Accordingly, the Court exercises its discretion to deny Healthnow's motion to dismiss for failure to timely serve.

IT IS THEREFORE ORDERED that the defendants' motions (docket nos. 152, 157-59 & 182) are GRANTED in PART and DENIED in PART and this case is TRANSFERRED to the Eastern District of Texas, Sherman Division.

It is so ORDERED.

SIGNED this 6th day of March, 2019.

FRED BIERY
UNITED STATES DISTRICT JUDGE

-26-